**In re NEW MEXICO NATURAL GAS ANTITRUST LITIGATION.**

**STATE OF NEW MEXICO ex rel. DEPARTMENT OF FINANCE AND ADMINISTRATION et al.**

v.

**SOUTHERN UNION COMPANY et al.**

**Nos. 80–1343, 80–1317.**

United States Court of Appeals, Tenth Circuit.

Argued March 28, 1980.

Decided May 5, 1980.

Rehearing Denied June 4, 1980.

Steven L. Tucker, and Jones, Gallegos, Snead & Wertheim, Santa Fe, N. M., for State of New Mexico ex rel. Dept. of Finance and Administration, et al., and Brewer, et al.

J. E. Gallegos, Santa Fe, N. M., Michael T. Garrett, Clovis, N. M., and James W. Witherspoon, Marion J. Craig III, and Donald L. Davis of Witherspoon, Akin & Langley, Hereford, Tex., for Hecht Co., et al.

Jerry L. Beane of Strasburger & Price, Dallas, Tex., and Victor R. Ortega of Montgomery, Andrews & Hannahs, Santa Fe, N. M., for Southern Union Co., Southern Union Gathering Co., and Gas Co. of New Mexico, Inc.

Bingaman, Davenport & Lovejoy, Santa Fe, N. M., for Supron Energy Corp.

Campbell & Black, Santa Fe, N. M., for Consolidated Oil & Gas Co.

Kellahin & Kellahin, Santa Fe, N. M., for Continental Oil Co.

James E. Coleman, Jr., Robert H. Mow, Jr. and Barbara M. G. Lynn of Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for Frank W. Denius, Effie Marie Cain and First Nat. Bank in Dallas, as co-executors of the Estate of Wofford Cain.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Pursuant to the disqualification provision of 28 U.S.C. § 455(b)(4), District Judge Howard C. Bratton issued a sua sponte order recusing himself from hearing these multidistrict, consolidated cases. The judge certified the order for interlocutory appeal to this Court under 28 U.S.C. § 1292(b). We accepted the appeal and, after reviewing the record, determined oral argument would not be of material assistance in the disposition of this matter. In deciding the case, we have considered the briefs filed by the parties in the petition for review, as well as those filed subsequently at our request.

These suits, two of which were brought in the District of New Mexico and another in the Northern District of Texas, involve antitrust claims of various parties against certain oil companies and individuals for conspiring to fix the wellhead price of natural gas produced in the San Juan basin and sold within New Mexico by the Southern Union Company. Monetary damages and injunctive relief are requested.

The Judicial Panel on Multidistrict Litigation ordered the Texas case transferred to the District of New Mexico for coordinated or consolidated pretrial proceedings with the action pending there, pursuant to 28 U.S.C. § 1407. 482 F.Supp. 333 (Jud.Pan. Mult.Lit.1979). A stipulated order to consolidate for pretrial a fourth case filed after this Multidistrict Panel order is under consideration by Judge Bratton, but has not been entered, pending resolution of the disqualification issue. Plaintiffs in one of the cases, *Brewer v. Southern Union Co.,* No. CIV 79–578–HB, seek relief on behalf of a class of residential consumers in a region of New Mexico. All federal judges of the District of New Mexico reside in this region and, as natural gas consumers, are all potential class members.

In recusing himself, Judge Bratton stated he could and would opt out as a class member to avoid receipt of any potential refund, but noted he would still receive the benefit of any lower utility bills resulting from the litigation. Consequently, although specifically finding he could "preside over this matter free from bias and with complete impartiality,"[1] Judge Bratton concluded as a matter of law that he had "either a financial interest in the subject matter in controversy, or such other interest that would be substantially affected by the outcome of the proceeding." We must decide whether Judge Bratton erred in concluding his status as natural gas consumer compels disqualification.

The federal disqualification statute provides in applicable part,

(b) He shall also disqualify himself in the following circumstances:

.    .    .    .    .

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding    .    .    .

28 U.S.C. § 455(b)(4). A financial interest is defined, with certain specific exclusions, as "ownership of a legal or equitable interest, however small    .    .    ." *Id.* § 455(d)(4).

---

1. All of the parties agree that Judge Bratton would be impartial, but the parties cannot waive § 455(b) grounds for disqualification. 28 U.S.C. § 455(e).

■ The statute differentiates between two kinds of interests. If the judge has direct ownership, legal or equitable, then disqualification is required regardless of the size of the interest, unless one of the specified exceptions applies. On the other hand, an interest not entailing direct ownership falls under "other interest," and requires disqualification only if the litigation could substantially affect it. We agree with the Fourth Circuit's determination that a remote, contingent benefit, such as a possible beneficial effect on future utility bills, is not a "financial interest" within the meaning of the statute. It is an "other interest," requiring disqualification under a "substantially affected" test. *See In Re Virginia Elec. & Power Co.*, 539 F.2d 357 (4th Cir. 1976). We find Judge Bratton's interest here to be too insubstantial to require recusal.

If the plaintiffs were to win on all their claims and a permanent injunction were issued nullifying the price-fixing agreements, the direct result would probably be the lowering of prices at the wellhead of the defendant producers' wells.[2] This would lower the cost of only a portion of the gas resold to New Mexico customers, because some gas is purchased from suppliers other than those engaged in the alleged price-fixing and there is statewide averaging of the rates. Even if this savings is passed on in total to the consumers, the cost of service would remain the same and only that part of the bill reflecting the cost of gas would be lowered. Any cost savings, therefore, would be considerably diluted before reaching the consumer.

There is also a possibility that the lower cost will not be passed on to the consumers. The New Mexico Public Service Commission has plenary power over natural gas rates. It has authorized utilities, under Rate Rider 4, to pass through changes in the cost of gas to their customers without a hearing. The Commission specifically states in this rider,

however, that "[n]othing in this Rate Rider No. 4 shall be deemed to preclude the Commission from holding such hearings from time to time as may appear to be appropriate or from making such adjustments in the cost of gas components provided for herein as may be in the public interest . . . ." Apparently the Commission has interfered with the operation of Rider No. 4 on several occasions. Therefore, independent intervention by the Commission cancelling any benefit is possible.

Three supplemental briefs, filed pursuant to this Court's request, address the question of how much the judge's gas bill is likely to be lowered if plaintiffs should win a complete victory in the litigation. One group estimated the savings would be about $31 per year; the second group estimated a savings of approximately $12 per year; and the third group claimed the amount was too speculative to be capable of estimation. Even the highest, $31, is a small amount. Coupled with the factor of contingency due to possible intervention by the Commission, this translates into a minor effect. *See Virginia Elec. & Power Co.*, 539 F.2d at 368.

In view of the statutory requirement that interests must be substantially affected before recusal is required, we believe Congress did not intend to require disqualification in all cases in which the judge might benefit as a member of the general public. We realize that recusal would be required by the statute if the judge owned even one share of stock in a party to the litigation. But an interest shared by the judge in common with the public is distinguishable for at least two reasons. First, the policy to promote public confidence in the impartiality of the judicial system is not served to as great an extent by disqualifying a judge who would receive only such a benefit. It is not simply a question of de minimis effect; a personal benefit or detriment shared in common with the community at large is perceived to have a different psy-

---

2. The applicable prayer in the *Brewer* case is "That a permanent injunction issue prohibiting and enjoining and restraining defendants . . . from further violations of the antitrust laws as herein alleged." Whether such an injunction, if granted, will actually cause a lowering of gas rates in the future depends to a certain extent on gas prices and rate structure in effect three to four years from now when this litigation will conceivably have reached final judgment.

chological effect on a judge than would a benefit or detriment not so shared.

Second, practical problems abound if recusal is required whenever a judge benefits simply as a member of the common populace. There is much litigation today that can have far-reaching effects on large segments of the nation. For instance, an antitrust suit against a major oil company could reduce gasoline prices within the entire United States, and hence affect the transportation costs of every judge. The rate-making proceedings of public utility commissions throughout the nation are reviewed by the courts in the states involved, where most of the reviewing judges are customers of the telephone, electric, water or gas company; yet there is no suggestion in any cases we have seen that these judges should disqualify themselves. Federal and state judges sit every day on tort, patent or other cases in which potentially large verdicts could affect an insurance or other company's profitability, and the loser is in a position to pass the loss on through higher future costs which increase the judges' cost of living.

Also, other costs must be considered. In the present case all federal judges in the District of New Mexico would be disqualified if we affirm. This is a multidistrict case assigned to New Mexico as the preferred forum, and assigned to Judge Bratton because of his particular expertise. Reassignment to another district, or assignment of a judge from another district to hear the case, whether in New Mexico or elsewhere, would cause great inconvenience to the counsel, parties, or judge, particularly if the litigation takes several years to complete.

We commend the trial judge for recognizing the problem and acting sua sponte to raise the issue. Because we hold he erred in recusing himself as a matter of law, we reverse and remand for reconsideration of the decision.