**In re CITY OF HOUSTON, Petitioner.**

**No. 84–2389.**

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1984.

John E. Fisher, Jerry E. Smith, Charles M. Williams, Houston, Tex., for petitioner.

George J. Korbel, Jesse Ray Botello, San Antonio, Tex., Craig Washington, Houston, Tex., for Moses Leroy & Greater Houston Council.

Frumencio Reyes, Houston, Tex., for Sidney Braquet.

L.A. Greene, Jr., Houston, Tex., for respondents.

Before BROWN, REAVLEY and POL-ITZ, Circuit Judges.

REAVLEY, Circuit Judge:

The City of Houston petitions for mandamus ordering Judge Gabrielle McDonald to recuse herself from the post-trial setting of attorneys' fees in a voting rights class action in which she was a member of the class. We deny the writ.

## I. CASE HISTORY

In December 1973, a group of private plaintiffs brought suit in the United States District Court for the Southern District of Texas against the City of Houston and certain city officials. The case was styled *Greater Houston Civic Council v. Mann*, No. 73–H–1650.[1] The plaintiffs, originally representing voters of every major ethnic group in Houston (including whites), challenged the City's at-large system of electing its eight council members on grounds that the system unconstitutionally discriminated against minority voters in the City by minimizing or diluting their votes. No monetary damages were ever requested.

The presiding judge to whom the case was initially assigned was the late Honorable Allen B. Hannay. At a pretrial conference held in Judge Hannay's chambers on November 8, 1976, counsel for all parties agreed that the case was a 23(b)(2) class action, the class being restricted to black and Mexican-American registered voters in the City, and that the named plaintiffs represented this class. Judge Gabrielle McDonald, to whom this case has now been assigned, is black and at the time of the trial was a registered voter in the City.

After a nineteen-day trial Judge Hannay denied the injunction and declaratory relief sought by plaintiffs. By the time of submission to the Fifth Circuit in 1979 the City

had changed its method of election and the parties agreed that the issue of the appeal was moot. The cause was remanded to the district court for a finding regarding the availability of attorneys' fees to any of the parties to the action.

The death of Judge Hannay resulted in the assignment of the case to Judge Woodrow Seals. In April 1983, the plaintiffs' attorneys filed their Motion for Attorneys' Fees in this consolidated cause in Judge McDonald's court. Judge McDonald then had two related cases on her docket (Nos. H–78–2174 and H–78–2407), and No. 73–H–1650 was reassigned to her.

In a letter dated August 30, 1983, John Whittington, Assistant City Attorney for the City of Houston, advised the court that,

> as the Court knows, 73–H–1650 was a class action suit and Your Honor was a member of the protected class. This particular problem does not arise in any of the subsequent litigation brought pursuant to the Voting Rights Act because Your Honor was a member of a three-judge panel which was not addressing substantive issues nor were those cases class actions. Thus, it is only 73–H–1650 that there exists the potential for some conflict.

Judge McDonald responded to Mr. Whittington in a letter dated December 6, 1983, advising him: "I do not intend to recuse myself voluntarily. You are, of course, free to file a Motion to Recuse which I would consider at that time."

The City then filed a motion to recuse, requesting that Judge McDonald disqualify herself from further proceedings on grounds that she was a "party to the proceeding," and thus was required to disqualify herself under 28 U.S.C. § 455 (1982).[2] The City also cited Canon 3(C) of the *Code*

---

**1.** A companion case, *Leroy v. City of Houston*, No. 78–H–2407, has been consolidated with *Mann* for hearing before Judge McDonald on the issue of attorneys' fees.

**2.** In their brief the attorneys for plaintiffs state that "[t]he implicit premise of petitioner's argument is that a judge who belongs to a racial

minority group is inherently incapable of presiding fairly in a civil rights action involving other members of that group." We find no justification for that statement. The City raises a question of substance and may well have served the court and all of the parties by seeing that it is resolved at this time.

*of Judicial Conduct.* Judge McDonald denied the motion to recuse.

## II. PRIMARY LAW

The disqualification or recusal of federal judges is governed by 28 U.S.C. § 455 (1982),[3] which provides in part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

\* \* \* \* \* \*

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such person:

(i) Is a party to the proceeding ....

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other states of litigation ....

The *Code of Judicial Conduct,* from which the statute's language derives, contains quite similar provisions.[4]

 A recusal motion under section 455 is committed to the sound discretion of the district judge. *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157, 1166 (5th Cir.1982), *cert. denied,* — U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). The question of disqualification is reviewable on a petition for writ of mandamus, but a writ will not lie in the absence of exceptional circumstances. *United States v. Gregory,* 656 F.2d 1132, 1136 (5th Cir.1981). "[T]he determination of the judge concerned should be accorded great weight, and should not be disturbed unless clearly erroneous." *Kinnear-Weed Corp. v. Humble Oil & Refining Co.,* 324 F.Supp. 1371, 1385 (S.D.Tex.1969), *aff'd,* 441 F.2d 631 (5th Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971).

 The issue of judicial disqualification is solely one of law. *McCuin v. Texas Power & Light Co.,* 714 F.2d 1255, 1260 (5th Cir.1983). It is "a sensitive question of assessing all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion." H.Rep. No. 1453, 93d Cong., 2d Sess. 3, *reprinted in* 1974 U.S. Code Cong. & Ad.News 6351, 6355. "[T]he

---

**3.** The current wording of § 455 was enacted in 1974. Section 3 of the Act amending § 455 provides that amendments "shall not apply to the trial of any proceeding commenced prior to the date of this Act [Dec. 5, 1974] ...." One plausible interpretation of the language quoted would be that the forerunner of § 455 would govern recusal in actions that, like the one at bar, are commenced before December 5, 1974. However, we are bound by this circuit's interpretation of this language as meaning that "the amended version of 28 U.S.C. § 455 is applicable to a case filed prior to the December 5, 1974 effective date of the amendment when the trial of the case does not commence until after the effective date." *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1109 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). The trial of the instant case began in November, 1976, and ended December 10, 1976. Thus the amended version of § 455 governs this case because of the *Potashnick* precedent.

**4.** The *Code of Judicial Conduct,* like § 455, was amended while this suit was pending in district court. When 73–1650 was filed the *Canons of Judicial Ethics* governed the professional conduct of federal judges. The *Canons* contained only two provisions regarding disqualification of judges. Canon 13 stated that a judge "should not act in a controversy where a near relative is a party," and Canon 29 provided that a judge "should abstain from performing any judicial act when his personal interests are involved. E. Thode, *Reporter's Notes to Code of Judicial Conduct* 60 (1973). The provisions of the present Code apply "to anyone who is a judge at the time of the adoption of the *Code* in his jurisdiction, *and to anyone who thereafter becomes a judge* ...." *Id.* (emphasis added). Therefore, the present *Code of Judicial Conduct* applies here.

goal of the judicial disqualification statute is to foster the *appearance* of impartiality." *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

### III. Section 455(b)(5): THE CLASS MEMBER AS A PARTY

We have no question but that Judge McDonald was a member of a declared class. Though not formally certified, we have no hesitation in treating it as if it had been. *See Bing v. Roadway Express, Inc.*, 485 F.2d 441, 446 (5th Cir.1973). In ruling on the merits of this case, the court referred to it as a class action. *See Greater Houston Civic Council v. Mann*, 440 F.Supp. 696, 697–98 (S.D.Tex.1977).

The question before us is whether a judge who is a member of a class in a voting rights case must recuse herself from sitting on that case. We are guided by no federal precedent on this point.[5] But we believe that we have before us a modern continuation of an age-old proposition derived from the civil law: *"Nemo debet esse judex in propria causa,"* which is to say, no man should be a judge in his own case. *See Black's Law Dictionary* 935 (5th ed. 1979). It is our interpretation of this venerable maxim, as applied through section 455, that controls the disposition of this case. We are not harking back to Latin bywords without sanction of our highest Court: "[N]o man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

Unfortunately, the definitional provisions of section 455 do not contain a definition of the word "party," so that we might know exactly when a person is being his own judge. Only one federal circuit opinion seems to have addressed the issue. The City cites *In re Cement Antitrust Litigation*, 688 F.2d 1297, 1313 (9th Cir.1982), *aff'd mem.*, 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983), in support of the proposition that, for recusal purposes, a class member is a party. The court there stated:

> We conclude that the term "party" as used in section 455 must be given its broad customary meaning rather than the narrow construction suggested by plaintiffs, and hold that for purposes of the recusal statute, the term "party" includes class members.

*Id.* In *Cement Antitrust*, the trial judge's wife owned stock in seven of the 210,235 class members, and her financial interest in the case was calculated to be $29.70. Because of this financial interest of the judge's wife, the court held that section 455 required that a new judge be assigned to conduct further proceedings. *Id.*

■ We agree with the result in *Cement Antitrust*, but disagree with the application urged by the City of that case's holding. The framers of section 455 laid down a *per se* rule where financial interests are concerned, so that even the slightest financial stake in the outcome of litigation—on the part of the judge, his spouse, or minor child—would disqualify the judge. Here we have a different case, in which Judge McDonald is considering a voting rights dispute where none of the plaintiffs has a financial interest. Hence the *per se* rule does not apply. We note also that the *Cement Antitrust* court was construing section 455(b)(4), not (b)(5).[6]

---

**5.** Nor is the legislative history helpful in this respect. The authors of § 455 apparently did not contemplate class actions. *See Judicial Disqualification: Hearing on S. 1064 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary*, 93d Cong., 2d Sess. 12 (1974); *Judicial Qualification: Hearing on S. 1064 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary*, 93d Cong., 1st Sess. 1–94 (1973).

**6.** Thus the *Cement Antitrust* court need not have reached the issue whether a class member is a party, because the judge's wife had a demonstrable financial stake in the outcome of the case, regardless of whether her interest was in a named party. Her interest fell under the *per se* rule mandating the judge's recusal.

The issue is not before us whether a member of a class is a party where the interest involved is pecuniary. Yet we doubt that the question

Moreover, *Cement Antitrust* involved a Rule 23(b)(3) class and not a Rule 23(b)(2) class. *See* Advisory Comm. on Codes of Conduct, Advisory Op. No. 68, II–213 (Oct. 15, 1981) (explaining that corporations in which judge's wife owned stock chose not to opt out of the litigation). The differences between the two types of class actions affect the perspective from which we must view this case. Because the class here was a 23(b)(2) class, no individual notice was given to class members as is accorded to 23(b)(3) class members. *See* Fed. R.Civ.P. 23(c)(2); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173–76, 94 S.Ct. 2140, 2150–51, 40 L.Ed.2d 732 (1974). Further, class members had no opportunity to opt out of the class, unlike members of a 23(b)(3) class. *See Penson v. Terminal Transport Co.,* 634 F.2d 989, 993–94 (5th Cir.1981). Finally, the two types of classes differ inasmuch as members of a 23(b)(2) class in a civil rights action are not typical-ly liable for attorneys' fees. *See, e.g., Tidwell v. Schweiker,* 677 F.2d 560, 568 (7th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1874, 76 L.Ed.2d 806 (1983) (attorneys' fees in civil rights case awarded to class representatives pursuant to 42 U.S.C. § 1988). Thus the member of a 23(b)(2) class is locked into his status as a litigant, without having to answer for attorneys' fees. His status as a party in interest is frequently a fiction.

▪ The question then becomes whether a judge who is a member of a 23(b)(2) class in a voting-rights case is a party for purposes of recusal. We hold that a judge so situated, absent any further showing of a connection with the named parties, should not be considered a party under section 455.[7] In so holding we find consistent support in decisions of the state courts.[8] We recognize that "an interest

---

need ever be reached, since where the interest is pecuniary the judge will be disqualified under the *per se* rule, and the matter of whether the judge or a close relation is a party becomes moot. To this extent, we question the holding in *Cement Antitrust* that, for recusal statute purposes, a class member is a party.

**7.** It is hardly unprecedented to treat class members differently from parties, because of the very nature of class actions.

> [I]f every class member had to be treated as a party in all circumstances, the purposes of Rule 23 might in some instances be frustrated. Thus, for example, the presence of non-diverse class members will not defeat federal diversity jurisdiction so long as the class representatives and the opposing parties are diverse; *e.g., Friedman v. Meyers,* 482 F.2d 435 (2d Cir.1973); *see also Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1058–59, 22 L.Ed.2d 319 (1969); C. Wright & A. Miller, *Federal Practice and Procedure* § 1755 at 550 n. 82; some courts have held that class members are not subject to discovery under Fed.R. Civ.P. 33; *e.g., Fischer v. Wolfinbarger,* 55 F.R.D. 129 (W.D.Ky.1971); *Wainwright v. Kraftco Corp.,* 54 F.R.D. 532 (N.D.Ga.1972); and other courts have held that class members should not be treated as parties for purposes of counterclaims under Rule 13; *e.g., Donson Stores v. American Bakeries Co.,* 58 F.R.D. 481 (S.D.N.Y.1973).

*In re Cement Antitrust Litig.,* 688 F.2d 1297, 1309 (9th Cir.1982), *aff'd mem.,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983).

**8.** The state courts have long held that a judge's interest in common with that of the general public in the locale is not a disqualifying interest. *See, e.g., Russell v. Wheeler,* 165 Colo. 296, 439 P.2d 43 (1968) (interest that judge may have in election contest determinative of a public issue does not disqualify him); *Hidalgo County Water Improvement Dist. No. 2 v. Blalock,* 157 Tex. 206, 301 S.W.2d 593, 596–97 (1957) (judge's interest as citizen of city and as patron of its water system and of its water improvement district was in common with that of the public and did not disqualify him from sitting in action between water improvement districts, water control and improvement districts, navigation districts, and others); *City of Valdosta v. Singleton,* 197 Ga. 194, 28 S.E.2d 759 (1944) (judge qualified to act in suit challenging validity of city's proceeding to acquire an electric distribution system, *though suit was brought in behalf of taxpayers and the judge fell within this class* ); *Chumbley v. People's Bank & Trust Co.,* 165 Tenn. 655, 57 S.W.2d 787, 788 (1933) ("Interest in a public question merely as a citizen of the state or the member of a civic body is not the interest contemplated by the [recusal] rule ...."); *Elliott v. Scott,* 119 Tex. 94, 25 S.W.2d 150, 151 (1930) (judge not disqualified because "he has no more interest [in the subject matter of the litigation] than has every other taxpaying citizen" of county); *Peters v. Meeks,* 171 So.2d 562 (Fla.Dist.Ct.App.1964) (judge held qualified to act in case involving validity of tax roll of county in which he is a resident and taxpayer); *Runyon v. George,* 349 S.W.2d 107, 108 (Tex.Civ. App.—Eastland 1961, writ dism'd) (judge's inter-

which a judge has in common with many others in a public matter is not sufficient to disqualify him. Where the interest of a judge as a resident, taxpayer, or property owner is not direct or immediate but remote or contingent, such interest ordinarily is not sufficient per se to disqualify him." 48A C.J.S. *Judges* § 123 (1981). There can be no doubt that this is a public matter in which Judge McDonald has no greater or lesser an interest than any other federal judge who votes in Houston. And that interest, insofar as it might give rise to bias, is insubstantial.

We question the *dictum* in an advisory letter by the Advisory Committee on Codes of Conduct of the Judicial Conference of the United States, cited in *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 719 F.2d 733, 735 (5th Cir.1983). That case involved the qualification of four judges who were ratepayers to a utility, where the utility was a party in a class action in which the class of ratepayers had not been certified. The Advisory Committee stated that the judges should not be disqualified, and the court so held. Yet, in its opinion letter, the Advisory Committee wrote: "If a judge is a member of a class which has been declared, and the class is a party to the litigation in which the judge is considering participation, that judge would be disqualified." 719 F.2d at 735 (citing Canon 3 C(1)(d)(i)). Even if this is a correct statement of the effect of the Code provision and of section 455 as a general proposition, it still does not contemplate a civil rights case with a 23(b)(2) class.

The City further contends under section 455(b)(5) that Judge McDonald should recuse herself because her husband, or some other person within the third degree of relationship, is a class member and hence a party. This contention *a fortiori* will bear no fruit, given our holding that the judge herself is not a party. The argument also suggests the consequences of a holding contrary to the one we make. Many civil rights suits are brought in the form of class actions. Considering the broad declaratory and injunctive relief that federal courts are called upon to dispense, it is hard to imagine a case in which a minority judge would not have a family member within the class—and thus, in the City's view, within the definition of "party." Our holding today is therefore all the more important, for a contrary decision would be an offensive precedent against judges who are members of minority groups.[9]

---

est as citizen of city "was that in common with the public at large and did not disqualify him from sitting in this election contest").

Similarly, the federal courts have held that membership in a bar association is not a basis for disqualifying judges under § 455 when the bar association is a party before the court. *Parrish v. Board of Comm'rs*, 524 F.2d 98 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *see also Plechner v. Widener College, Inc.*, 569 F.2d 1250 (3d Cir. 1977); *Scarrella v. Midwest Federal Sav. & Loan*, 536 F.2d 1207 (8th Cir.), *cert. denied*, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976).

**9.** Even had we not far stronger grounds for denying the writ of mandamus, we might have recourse to the Rule of Necessity, which states: "[A]lthough a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise." *United States v. Will*, 449 U.S. 200, 214, 101 S.Ct. 471, 480, 66 L.Ed.2d 392 (1980) (quoting F. Pollack, *A First Book of Jurisprudence* 270 (6th ed. 1929). Couched in other terms, the rule requires that "where all are disqualified, none are disqualified." *Pilla v. American Bar Ass'n*, 542 F.2d 56, 59 (8th Cir.1976) (citing *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920). The lower court in *Pilla* noted that the maxim "would seemingly not allow a District Court Judge to proceed if other judges are available by substitution." *Turner v. American Bar Ass'n*, 407 F.Supp. 451, 453 (N.D. Tex., W.D.Pa., N.D.Ind., D.Minn., S.D.Ala., & W.D.Wis.1975), *aff'd sub nom. Pilla v. American Bar Ass'n, supra*. The Supreme Court has noted that the amended § 455 "was not intended by Congress to alter the time-honored Rule of Necessity." *United States v. Will*, 449 U.S. 200, 218, 101 S.Ct. 471, 482, 66 L.Ed.2d 392 (1980).

The rule is somewhat analogous to an easement by necessity, which requires that one be completely landlocked before the doctrine will apply. Yet the analogy is imperfect insofar as the Rule of Necessity may not require that the federal courts be utterly "landlocked" before Judge McDonald can hear this case. As the court in *In re New Mexico Natural Gas Antitrust Litig.*, 620 F.2d 794 (10th Cir.1980), stated, "[A]ll federal judges in the District of New Mexico

## IV. REMOTE AND CONTINGENT BENEFITS

It has been held that remote, contingent, and speculative beneficial effects upon future utility bills are not a "financial interest" within the meaning of the statute. *In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794 (10th Cir.1980); *In re Virginia Electric & Power Co.*, 539 F.2d 357 (4th Cir.1976). These cases involved a possible pecuniary gain. In the instant case we are confronted with a remote, contingent, and speculative benefit that is of a nonpecuniary nature.

It is doubtful whether the change sought to be effected by plaintiffs in the creation of voting districts would have benefited Judge McDonald at all. When the complaint was filed in this case, she lived in a predominantly black neighborhood; but since 1975, she has resided in a voting precinct that is predominantly non-black and non-Hispanic. Judge McDonald is a class member merely because of the way in which the attorneys in the case decided to frame the class. *Cf. Ely Valley Mines, Inc. v. Lee*, 385 F.2d 188, 191 (9th Cir.1967) (in which counsel attempted to transmute a lawsuit between others into the judge's own case merely for the purpose of disqualifying him). We cannot draw a direct analogy between *Ely* and the present case, because here the attorneys agreed on the class long before Judge McDonald even became a federal judge. Nevertheless, in delimiting the class the attorneys cast the definitional net wider than was arguably necessary, so that Judge McDonald now falls within the overbroad category of plaintiffs.[10]

Indeed, the delineation is a illusory one, insofar as the interest of the class member is equal to that of persons not members of the class. For every class that claims to be injured by an action or policy that is the subject of declaratory relief, there is a counter-class that, by definition, must be benefited. If the voting power of blacks is made less diluted and more equitable, then the voting power of any other class of voters, such as whites, is proportionally affected. Virtually every citizen of Houston who is a voter, then, has an equal stake in this litigation, infinitesimal though any individual's interest may be. Members of this broadly drawn class have only the most attenuated interest in the litigation, although society at large—comprising both members of the class and nonmembers—is substantially affected.

## V. RELATED CASES

Though not dealing with judges as parties, in *In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794 (10th Cir.1980), the court discussed the principle that a judge's being a beneficiary as a member of the public is too rarefied an interest to require recusal. It held that the trial judge's status as a natural gas consumer was so insubstantial that he should not be recused from consolidated multidistrict cases involving antitrust claims of price-fixing against oil companies.

The court stated:

[W]e believe Congress did not intend to require disqualification in all cases in which the judge might benefit as a member of the general public. We realize that recusal would be required by the

would be disqualified if we affirm. This is a multidistrict case assigned to New Mexico as the preferred forum, and assigned to Judge Bratton because of his particular expertise." *Id.* at 797. Most important, however, the court remarked on the impracticality and unnecessary hardship that would result from recusal where the grounds are tenuous at best: "Reassignment to another district, or assignment of a judge from another district to hear the case, whether in New Mexico or elsewhere, would cause great inconvenience to the counsel, parties, or judge ...." *Id.* The same inconveniences would re-

sult in the case at hand, because no resident Houston district judge would be qualified if Judge McDonald were held to be disqualified.

**10.** Judge Hannay's Final Order in this case refers to "black and mexican [sic] minorities in the City of Houston," not even limiting the class to registered voters. A class definition of "black and Hispanic registered voters in Houston" would likewise have been broader than necessary, for there would have been no assurance that all such voters had been adversely affected by the at-large election system.

statute if the judge owned even one share of stock in a party to the litigation. But *an interest shared by the judge in common with the public is distinguishable ....*

*Id.* at 796–97 (emphasis added). The *New Mexico Natural Gas* court adduced two reasons why a demotic interest, shared with the public in general, presents a different case from that in which the judge has even the slightest financial interest. First, "the policy to promote public confidence in the impartiality of the judicial system is not served to as great an extent by disqualifying a judge who would receive only such a benefit." *Id.* at 796. Certainly where, as here, the judge would share in a nonpecuniary benefit or detriment with the majority or totality of the public, he could hardly be accused on that basis alone of being less than disinterested. Second, the court pointed out the practical problems that would be created by a misdirected application of the recusal statute, observing that "[f]ederal and state judges sit every day on tort, patent or other cases in which potentially large verdicts could affect an insurance or other company's profitability ... which [could] increase the judge's cost of living." *Id.* at 797.

The District of Columbia Circuit has decided a case almost directly on point. *Christiansen v. National Savings and Trust Co.,* 683 F.2d 520 (D.C.Cir.1982), was a class action in which the class was defined as "all federal employees who were Blue Cross and Blue Shield subscribers." *Id.* at 521. Though some federal judges considering the case were subscribers, they were held not to be disqualified from hearing the case, in part because no damages were sought.

As between federal judges who presently subscribe to the health insurance program in question and those who do not, the subscribers present the worst case hence the best prospects for disqualification if there is to be any in this case. Though our ultimate decision is to the contrary, we have to assume for recusal purposes, that subscribers are beneficiaries. Thus, if the law does not mandate

the disqualification of subscribers, nonsubscribers are a fortiori insulated from disqualification.

\* \* \* \* \* \*

We ... hold that the interest of subscribing federal judges is too contingent and remote to warrant disqualification in the circumstances presented. This analysis moots the question whether the "rule of necessity" ... would be for application in any event, and would require us to sit regardless.

*Id.* at 526. The court did not discuss the judges as "parties," presumably because of the highly attenuated nature of their interest.

## VI. CONCLUSION

Because of (1) the fact that Judge McDonald's interest in this case is nonpecuniary and is no different from that of the general voting public in Houston; (2) the lack of any possible attrition of public confidence in the impartiality of the judicial system if recusal is not ordered; (3) the attenuated nature of any interest that the judge might have in the outcome of this case; and (4) the illusoriness of the class delineation, inasmuch as all members of the voting public in Houston have an equal interest in the suit—we hold that Judge McDonald's posture in this case is not what Congress intended to proscribe in the recusal provisions of section 455(b)(5).

Given our disposition and exposition under section 455(b)(5), we need not address in detail the City's other arguments. The City contends that Judge McDonald has a "substantial interest" under section 455(b)(4); we have already dealt with that issue in noting the attenuated nature of her interest. Finally, the City argues that Judge McDonald should be recused under section 455(a), on grounds that her impartiality might reasonably be questioned. No showing has been made to raise any issue of her impartiality, either in fact or by appearance.

The writ of mandamus is DENIED.