**ALASKA OIL COMPANY, a general partnership, and Charter Oil (Alaska), Inc., a corporation, Appellants,**

v.

**STATE OF ALASKA, Appellee.**

Civ. A. Nos. A83–428, A83–429.
Bankruptcy Nos. 1–82–0000–1,
1–82–0000–2.

United States District Court,
D. Alaska.

Jan. 4, 1985.

Charles E. Cole, Law Offices of Charles E. Cole, Fairbanks, Alaska, Stuart L. Kadison, Lee L. Blackman, Monica Bachner, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., Stephen D. Busey, Douglas P. McClurg, Smith & Hulsey, Jacksonville, Fla., Richard B. Levin, Anthony Castanares, members of Stutman, Treister & Glatt, Professional Corp., Los Angeles, Cal., for appellants.

Norman C. Gorsuch, Atty. Gen. of State of Alaska, Juneau, Alaska, Haley J. Fromholz, Jonathan M. Landers, Kenneth M.

Glazier, Steven S. Rosenthal, Morrison & Foerster, Los Angeles, Cal., for appellee.

## OPINION

FITZGERALD, District Judge.

*Background*

The original dispute had to do with the sale of oil which the State of Alaska was entitled to receive as "in kind" royalties under its North Slope mineral leases. Appellant Alaska Oil Co. (AOC) succeeded in 1979 to the obligations to purchase the royalty oil under a 1978 contract. Charter Oil (Alaska), Inc. (COA) owns a majority interest in AOC.

A dispute arose as to whether AOC fulfilled its contractual obligations under the agreement. In December 1981, AOC filed suit for declaratory judgment against the state in the state superior court.[1] In February 1982, the state filed involuntary petitions in bankruptcy against AOC and COA seeking payments allegedly due under the contract.[2]

Judge David N. Naugle, Bankruptcy Judge for the Central District of California, was designated by Chief Judge James Browning of the Ninth Circuit to Alaska and was assigned the bankruptcy court proceedings. On January 21, 1983, after five days of trial, Judge Naugle ruled in favor of AOC and COA, and requested that the companies submit proposed findings of fact and conclusions of law. AOC and COA did so on February 11, 1983, and also filed a Motion for an Award of Reasonable Attorneys' Fees. At a post-trial hearing on April 27, 1983, the court denied the award of attorneys' fees. It also settled the findings of fact and conclusions of law, and announced them from the bench.

The state then requested that the court not enter adverse findings, and, at the court's suggestion, the state moved for leave to dismiss the petitions with prejudice without formal entry of findings of fact

and conclusions of law. On June 15, 1983, the bankruptcy court granted the state's motions. The Order of Dismissal, entered on June 29, 1983, specifically denied the request for entry of findings and conclusions and the request for attorneys' fees.

On July 7, 1983, AOC and COA appealed to this court. The case was initially assigned to Judge von der Heydt, but later reassigned to me. On appeal, AOC and COA seek reversal of the decision of the bankruptcy court, and a remand with instructions to enter the settled findings of fact and conclusions of law and to determine and enter judgment for the reasonable attorneys' fees incurred by AOC and COA.

On October 25, 1983, appellants AOC and COA filed a Motion for Recusal, requesting that I disqualify myself from hearing the appeal, and that the Chief Judge of the Ninth Circuit designate a nonresident district judge to preside. In support of their motion, AOC and COA cite 28 U.S.C. § 455 (1982) which provides for disqualification if a judge has "a financial interest in the subject matter in controversy ... or any other interest that could be substantially affected by the outcome of the proceeding." AOC and COA observe that a portion of any income the state might recover in this action would be deposited in the state's permanent fund, and that part of the income from the fund would be distributed to all Alaska residents, including resident federal judges, as a permanent fund dividend. This, AOC and COA reason, gives the judge an "interest" in the proceedings, thus requiring disqualification.

*Applicable Statutes*

Title 28 U.S.C. § 455 (1982) provides for disqualification of federal judges under certain circumstances. In relevant part, this statute reads:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

---

1. *Alaska Oil Co. v. State of Alaska,* No. 4FA 81–2071 (filed December 17, 1981).

2. *In re Alaska Oil Co.,* No. 1–82–00001 (Bankr.Ct. filed February 26, 1982); *In re Charter Oil (Alaska), Inc.,* No. 1082–00002 (Bankr.Ct. filed February 26, 1982).

(b) He shall also disqualify himself in the following circumstances:

. . . .

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

. . . .

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

. . . .

(4) "financial interest" means ownership of a legal or equitable interest, however small . . .:

. . . .

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b).

The Alaska permanent fund was created by art. IX, § 15 of the Alaska Constitution which provides:

At least twenty-five percent of all mineral lease rentals, royalties, royalty sale proceeds, federal mineral revenue sharing payments and bonuses received by the State shall be placed in a permanent fund, the principal of which shall be used only for those income-producing investments specifically designated by law as eligible for permanent fund investments. All income from the permanent fund shall be deposited in the general fund unless otherwise provided by law.

Alaska Stat. title 43, ch. 23 (1983) provides for permanent fund dividends. Under this statute, 50% of the income from the permanent fund is transferred each year to the dividend fund. Alaska Stat. § 43.23.045(b) (1983). The dividend fund is then distributed each year in equal shares to all eligible Alaska residents. *Id.* § 43.-

23.025. In general, an individual who has been a state resident for at least six months is eligible to receive a permanent fund dividend. *Id.* § 43.23.005(a).

*Issues*

(1) Do the federal judges of the District of Alaska have a "financial interest," as that term is defined in 28 U.S.C. § 455, in the Alaska permanent fund?

(2) Is the Alaska permanent fund part of the "subject matter in controversy"?

(3) Does the judge's entitlement to a permanent fund dividend constitute "any other interest that could be substantially affected by the outcome of the proceeding"?

Title 28 U.S.C. § 455 defines "financial interest" as "ownership of a legal or equitable interest however small." I must initially determine whether as an Alaska resident I have a "financial interest" in the Alaska permanent fund.

Alaska Constitution art. IX, § 15 mandates that "[a]t least twenty-five percent of all mineral lease . . . royalties [and] royalty sale proceeds" be placed in the permanent fund. In these involuntary bankruptcy proceedings, the state seeks payments allegedly due under a contract for the sale of the state's royalty oil. Thus, if successful, any money recovered by the state would constitute "royalty sale proceeds," and at least 25% would be deposited in the permanent fund. Under the statutes providing for the permanent fund dividend, half of the annual income from these proceeds would be distributed to all eligible residents. Alaska Stat. §§ 43.23.025, 43.23.045 (1983).

I conclude that entitlement to a permanent fund dividend is not a "financial interest" as that term is defined in 28 U.S.C. § 455(d)(4). Entitlement to a dividend does not confer any "ownership" interest in the permanent fund. The commentary on Canon 3(C) of the ABA Code of Judicial Conduct, on which § 455 was based, supports this conclusion:

Not all of a judge's economic interests are defined as "financial interests." . . . The "financial interest" of a judge that will disqualify him is his *direct legal or*

*equitable ownership* no matter how small ... in the subject matter in a proceeding before him.

E. Thode, Reporter's Notes to Code of Judicial Conduct, 69–70 (1973) (emphasis added). The reporter further noted that certain interests were not direct financial interests. These included financial interests as a customer of a public or private utility, as a taxpayer, and as a premium payer in a stock insurance company. *Id.* at 66; *see also New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 719 F.2d 733, 734 (5th Cir.1983) (en banc) (holding that judge's status as rate payer did not require automatic disqualification); *In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794 (10th Cir.1980) (same).

I therefore conclude that I do not, as an Alaska resident, have a "financial interest" in the permanent fund.

■ Turning to the second part of the statutory requirement for disqualification based on "financial interest," I further conclude that the permanent fund is not a part of the "subject matter in controversy." The case at bar in the district court is an appeal from a decision of the bankruptcy court dismissing the involuntary bankruptcy proceedings. One of the basic issues faced by the bankruptcy court was whether the state was entitled to additional payments under the royalty oil sale agreement. Thus the permanent fund was more directly implicated in the bankruptcy court proceedings.

The same is not true in this court, however. There are two issues before me in this appeal: (1) whether the bankruptcy court should have entered findings of fact and conclusions of law, and (2) whether the bankruptcy court should have awarded attorneys fees to AOC and COA. Whatever decision I make here can have no direct effect on the permanent fund.

AOC and COA argue, however, that the statute's focus on "the subject matter in controversy," rather than on the particular issue to be resolved, requires a broad interpretation of "the subject matter in controversy."[3] The companies suggest that the permanent fund is indeed part of the larger "subject matter in controversy" for these reasons: The merits of the royalty payment dispute are currently before the state superior court in a declaratory judgment action. If the bankruptcy court is ordered to enter findings of fact and conclusions of law, the state court judge may give such findings and conclusions collateral estoppel effect in the state court proceeding. The outcome of the underlying royalty payment dispute, and potential permanent fund revenues, thus may be affected by whether or not I direct the bankruptcy court to enter findings and conclusions.

I conclude otherwise. While the proceedings in bankruptcy court may have had an impact on the amount of revenue obtained by the state for the permanent fund, the issues raised on appeal are otherwise. Permanent fund revenues are not at stake in this appeal. I therefore conclude that the permanent fund is not part of the "subject matter in controversy" before me.

Given my conclusion that entitlement to a permanent fund dividend is not a "financial interest in the subject matter in controversy," I now turn to the second provision of 28 U.S.C. § 455(b)(4). This provision requires disqualification if a judge has "any other interest that could be substantially affected by the outcome of the proceeding." The term "other interest" is not defined in the statute. Whereas the first provision of § 455(b)(4) requires disqualification for any financial interest, "however small," *id.* § 455(d)(4), the second provision applies only to those other interests which could be "substantially affected" by the outcome.

It has been suggested that the outcome of this test should "depend on the interaction of two variables: the remoteness of the interest and its extent or degree." Note, *Disqualification of Judges and Justices in the Federal Courts*, 86 Harv.L. Rev. 736, 753 (1973). To elaborate,

---

**3.** *See* Appellants' Reply to the State of Alaska' Opposition to Motion for Recusal at 3–4 (filed November 15, 1983).

If the interest strongly resembles a direct interest—for example, stock held in a subsidiary (or parent) of the corporate party—any amount should disqualify, just as does any stock held in the party itself. As the interest becomes less direct, such as that in an enterprise carrying on business with the party, only if the extent of the interest is itself substantial can the judge's impartiality reasonably be questioned.

*Id.; see also In re Virginia Electric and Power Co.*, 539 F.2d 357, 368 (4th Cir.1976); 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3547 (2d ed. 1984).

■ Applying this analysis to the facts of the case before me, I conclude entitlement to a permanent fund dividend does not warrant disqualification. First, as discussed above, the permanent fund is only indirectly implicated in this appeal. My decision here will not directly increase or decrease permanent fund revenues. Second, the extent of my interest is very small. AOC and COA themselves estimate that the amount at stake in these proceedings might translate into an increase of $1.78 in the annual permanent fund dividend for each Alaska resident.[4] This small amount, coupled with the indirectness of the effect, does not rise to the level of "any other interest that could be substantially affected." This conclusion comports with decisions of the Fourth and Tenth Circuits in which small, indirect, potential benefits were held to not require disqualification. *See In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794 (10th Cir. 1980); *In re Virginia Electric and Power Co.*, 539 F.2d 357 (4th Cir.1976).

In *In re New Mexico Natural Gas*, the Tenth Circuit identified additional factors to be considered under the "substantially affected" provision of § 455(b)(4). The court observed:

In view of the statutory requirement that interests must be substantially affected before recusal is required, we be-lieve Congress did not intend to require disqualification in all cases in which the judge might benefit as a member of the general public. We realize that recusal would be required by the statute if the judge owned even one share of stock in a party to the litigation. But an interest shared by the judge in common with the public is distinguishable for at least two reasons. First, the policy to promote public confidence in the impartiality of the judicial system is not served to as great an extent by disqualifying a judge who would receive only such a benefit. It is not simply a question of de minimis effect; a personal benefit or detriment shared in common with the community at large is perceived to have a different psychological effect on a judge than would a benefit or detriment not so shared.

Second, practical problems abound if recusal is required whenever a judge benefits simply as a member of the common populace. There is much litigation today that can have far-reaching effects on large segments of the nation. For instance, an antitrust suit against a major oil company could reduce gasoline prices within the entire United States, and hence affect the transportation costs of every judge. The ratemaking proceedings of public utility commissions throughout the nation are reviewed by the courts in the states involved, where most of the reviewing judges are customers of the telephone, electric, water or gas company; yet there is no suggestion in any cases we have seen that these judges should disqualify themselves. Federal and state judges sit every day on tort, patent or other cases in which potentially large verdicts could affect an insurance or other company's profitability, and the loser is in a position to pass the loss on through higher future costs which increase the judges' cost of living.

620 F.2d at 796–97.

Similar considerations apply here. According to the records of the Clerk of the

---

**4.** *See* Affidavit of Charles E. Cole in Support of Motion for Recusal, exhibit 2 at 11–12 (filed October 25, 1983).

Court for this district, 60 cases have been filed here since 1981 which likely involve potential permanent fund revenues. This averages 15 cases per year, and these cases often entail far-reaching and complex litigation. Moreover, I note that the state is entitled to 90% of oil revenues received by the federal government from federal oil leases in the state. Cases involving federal leases thus may also have an impact on the permanent fund. It is readily apparent that frequent assignment of nonresident judges to hear these cases would impair the effective administration of justice in the federal court in the District of Alaska.

For these reasons, I conclude that my entitlement to an Alaska permanent fund dividend does not constitute either a "financial interest in the subject matter in controversy" nor "any other interest that could be substantially affected by the outcome of the proceedings." Accordingly, there are no grounds for disqualification under 28 U.S.C. § 455. The Motion for Recusal is therefore DENIED.

ORDERED ACCORDINGLY.