[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Defendant, Sherwin-Williams Company, (hereinafter Sherwin-Williams, has moved that I recuse[1] myself from this matter and cites as its reason my ownership (with my wife as tenants by the entirety) of our home situated in Lincoln, Rhode Island which we caused to be built in 1968-69. Sherwin-Williams contends that that ownership creates an economic interest by me in the subject matter of the controversy and also makes me a party to this proceeding — both the alleged economic interest and party status preclude my participation in this case according to Sherwin-Williams. Further, and in any event, it is claimed by that defendant that a hypothetical, reasonable third person would deem my service as a judge in this matter as improper or, at least, as giving the appearance of impropriety. Sherwin-Williams asserts the disqualification thus is mandated by reason at least of Article VI, Rule 1, Canons 2 and 3 of the Rhode Island Supreme Court Rules, the Code of Judicial Conduct, (hereinafter Code).
The case was commenced by complaint filed with the Office of the Clerk of the Providence County Superior Court on October 12, 1999. By order dated January 31, 2000, the Presiding Justice assigned this matter to me ". . . for all matters." Since that time, in fact, I have presided over all matters in connection with this extremely contentious case. Those matters have included countless substantive and discovery motions, many dealing with novel issues of law, and a seven-week jury trial to an ultimately hung jury. A number of the rulings of this Court[2] have resulted in petitions seeking review by our Supreme Court. Indeed, at one point shortly before the jury trial referred to above, the United States Supreme Court was asked by the defendants to stay these proceedings while review of a decision and order of this Court was undertaken. That request was denied. Presently pending before our Supreme Court is a writ of certiorari reviewing an order of this Court with respect to the propriety of the State's engagement of outside contingent fee counsel in connection with this public nuisance suit. Some evidence of the contentiousness with which this matter has been pursued both by plaintiff and defendant is seen in the Court's docket which covers more than one hundred and twenty pages.
The travel of the recusal/disqualification issue is reflected in certain recent correspondence found in the record. Specific reference is made to: (1) letter of July 7, 2005 Paul Michael Pohl, Esquire (of the firm of Jones Day, one of the attorneys for Sherwin-Williams) to the Court, (2) letter of July 12, 2005 from the Court to Paul Michael Pohl, and (3) letter of July 25, 2005 from Paul Michael Pohl to the Court.
At a previously scheduled hearing in this case on another issue held on July 26, 2005 in open court, I indicated that I was treating the July 25th letter as a motion to recuse. At the hearing on that date I invited responses from all parties who desired to so respond and set a deadline for filing such responses. Within the time frame set, I received responses from defendants American Cyanamid and Cytec, expressly not joining in Sherwin-Williams' motion. On the other hand, defendants Atlantic Richfield Company and NL Industries, Inc. filed a brief joint memorandum in which they stated that "it appears (to them) that the provisions of the Code of Judicial Conduct noted by Sherwin-Williams in its analysis apply." Plaintiff, the State of Rhode Island, filed a lengthy opposition to the motion to disqualify, complete with, for lack of a better term, affidavits from three professors of law (which, on motion of Sherwin-Williams, the Court has ordered stricken from the record). The State's opposition addressed not only its view of the merits of Sherwin-Williams' position, but suggested certain nefarious or inappropriate grounds for the Sherwin-Williams' motion noting that trial on the merits was scheduled to commence in early September. The Court also notes that third-party defendant, Rhode Island Housing and Mortgage Finance Corporation, filed a brief objection to Sherwin-Williams' motion giving reasons and joining in part with the State's objection. On August 4, 2005 Sherwin-Williams filed with the Clerk's Office a Memorandum of Law and Supplemental Authorities which did not reach this Court until Tuesday, August 9th (despite standing instructions in this matter that bench copies of all filings be served on chambers.) No other submissions were received by the Court.
On August 5, 2005 the Court heard extensive argument from counsel for Sherwin-Williams in favor of the disqualification motion, and from counsel for the State in opposition thereto.
This Court starts its discussion of the disqualification issue by noting that what probably often occurs when a judge is asked to disqualify him or herself from sitting on a matter — that is to say — for however short a period of time the judge becomes central to the case and to the controversy among the parties rather than simply serving as a referee of the dispute. That fact itself, for fact it is, and indeed it has occurred in this case detracts from the role of the judge envisioned by the Preamble to the Code which inter alia sets forth that:
 The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law.
Here the movant, joined by two other defendants contend that recent discovery has fleshed out the relief sought by the State in this now almost six year old case. Essentially movant states that it believes that remedies sought by the State with respect to pre-1978 homes in Rhode Island, possible inspection and remediation, would have an economic impact on my home and upon me. Further, Sherwin Williams claims that previous rulings by the Court (without disclosure of the facts as to my house) have prevented defendant's discovery efforts as to pre-1978 homes generally, and that this Court's July 3, 2002 Decision denying defendants' motion for an order requiring individual notice to each property owner and specifying the manner in which owners shall be heard, together with the Order entered in connection therewith are glaring examples of actions which required disclosure of the alleged economic interest of the Court in the outcome of the case.
The State counters Sherwin-Williams' position by suggesting that the Court's interest here is no different from that of any other member of the public. The thrust of plaintiff's case is one of public nuisance resulting from the manufacture, distribution and/or sale of lead pigment by defendants and/or by their predecessors in interest for use in lead paint or coatings, and while not all members of the Rhode Island public own pre-1978 homes (in fact it is estimated that between 250,000 and 331,000 or somewhere around 80% of the housing units in the State of Rhode Island were built before 1978), plaintiff contends that all members of the general public have been impacted. The State seeks money damages for its expenditures resulting from the alleged public nuisance and seeks abatement as equitable relief in order to rid the State of the alleged public nuisance. Plaintiff presses upon the Court the concept that an interest shared with the general public is not a disqualifying interest and need not be disclosed. Plaintiff tells us that at most such an interest is "remote, contingent, indirect or speculative". The State points to cases in which a judge is asked to review utility matters which may impact rates charged to the public by the utility where the judge is a consumer of the utility services. Under such circumstance, recusal is not required because the judge has no position that differs from that of any member of the general public. In such cases recusal is not required and indeed may be prohibited.
This Court believes that in this case there is no cause for recusal. The Court believes that his position is as a member of the general public only and under the circumstances neither disclosure nor recusal are required. Harkening back to the Preamble to the code "The canons and sections are rules of reason." The Court here, not having any interest beyond that which is held by the general public, believes it was not obligated to disclose even the facts that were disclosed in the July 12, 2005 letter. Further as to that letter, I offered (with my wife) ". . . to execute an appropriate waiver in connection with the issues implicated in the lead pigment case."
There follows this Court's analysis of the specific provisions of the Code which movant seems to believe are implicated in its motion.
The primary basis for Sherwin-Williams' contention as understood by the Court, is that Code Cannon 3E in pertinent part provides:
 E. Disqualification.
 1. A judge shall disqualify himself . . . in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
 (c) the judge knows that he . . . individually . . . or the judge's spouse . . . has an economic interest in the subject matter in controversy . . . or has any other more than de minimis interest that could be substantially affected by the proceeding;
 (d) the judge or the judge's spouse . . .
 (i) is a party to the proceeding . . .
 (iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;
 . . .
While Rhode Island precedent is scarce, numerous other courts applying either their version of the Code or in the case of the Federal Courts, the statutory codification thereof as enacted by Congress have been called upon to rule under somewhat analogous factual patterns. The Court suggests that the factual patterns are only somewhat analogous because it has found no case nor has any been called to the attention where the issue at hand dealt with proposed recusal or disqualification of a judge in the face of a claimed statewide public nuisance.
While a great number of cases have been called to the Court's attention by each side, the Court does not believe under the unique circumstances of this case that a detailed examination of the cited judicial thinking is helpful. Rather the Court notes and relies on the language expressing the thought of the Tenth Circuit Court of Appeals in a 1980 opinion reversing a United States District Court judge who sua sponte had recused himself in connection with certain anti-trust litigation:
 ". . . an interest shared by the judge in common with the public is distinguishable (from cases where the judge has a specific interest) for at least two reasons. First, the policy to promote public confidence in the impartiality of the judicial system is not served to as great an extent by disqualifying a judge who would receive only such a benefit. It is not simply a question of de minimis effect; a personal benefit or detriment shared in common with the community at large is perceived to have a different psychological effect on a judge than would a benefit or detriment not so shared." In re New Mexico Gas Antitrust Litigation, 620 F. 2d 794, 797.
Incidentally, that Court went on to address as its second reason the burden placed on the Court's system when a recusal is necessary. For example, anecdotal evidence suggests here that many members of the judiciary both at the trial court level and at the appellant level are similarly situated with respect to their homes as am I.
While Sherwin-Williams notes that issues of this nature oft times come up in class action proceedings (see my letter of July 12, 2005 discussing how in a recent class action matter involving suits in the United States District Court for the District of Rhode Island, and in the Superior Court, the federal judge and I, together with our spouses, waived any entitlement to benefits resulting from the settlement of those cases which will benefit slightly in excess of 116,000 Blue Cross subscribers.)
The case presently before the Court is, of course, not a class action. It is an action brought on behalf of the State of Rhode Island. The claim for damages herein by the State is not a claim to which the members of the general public each have their own separate entitlement, and as a matter of law and fact, the damages asserted here inure to the benefit of the plaintiff state. So too the equitable remedy sought of abatement directly will benefit the state, and as to any individual property owner it is at most "remote, contingent, indirect or speculative."
The Code as embodied in the Rhode Island Supreme Court Rules, of course, does not specifically provide for a waiver. As noted above the Preamble provides inter alia that the Code and its constituent elements are rules of reason. This Court believes that reason dictates that a waiver should be permitted (although the Court does not believe it necessary) in order to obviate any possible appearance of impropriety. As explained above, the Court believes that within the contemplation of the Code none of the provisions relied on by Sherwin-Williams, in fact or in law, result in the need or indeed the right of the Court to disqualify or recuse itself. In Kelly v. Rhode Island Public TransitAuthority, 740 A.2d 1243, 1246 (R.I. 1999), our Supreme Court stated:
 "It is a well recognized principle that a trial justice should recuse himself or herself in the event that he or she is unable to render a fair or an impartial decision in a particular case. (Cite omitted). It is an equally well recognized principle that a trial justice has as great an obligation not to disqualify himself or herself when there is no sound reason to do so as he or she has to disqualify himself or herself when a proper occasion to do so does arise. (Cite omitted)."
In keeping with that admonition, I respectfully deny the motion of Sherwin-Williams joined in by two of the other defendants and reiterate my intention, together with my spouse, to execute an appropriate waiver as aforesaid.
The Court believes it would be remiss if it failed to comment on the suggestion by the State of nefarious grounds for the filing of the motion dealt with above. While the Court is cognizant of the fact that the motion was filed approximately a month and a half before the trial after a almost six-year span of time from the original filing of this case, it holds that no evidence has been presented to it by which it could hold that an improper purpose motivated Sherwin-Williams filing of the motion to disqualify.
An order consistent with the provisions of the above decision simply incorporating the decision and denying the motion shall be presented by the State forthwith.
[1] The words "recuse" and "disqualify" are used herein interchangeably.
[2] The words "I" and "me" and "Court" and "it", (referring to the Court), are used herein interchangeably.