Elbert J. DAVIS, Plaintiff-Appellant,

v.

XEROX, a New York Corporation, Defendant-Appellee.

No. 85–6285.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1986.

Decided March 3, 1987.

---

Elbert J. Davis, Inglewood, Cal., for plaintiff-appellant.

Virginia S. Grogan, Los Angeles, Cal., for defendant-appellee.

Before CANBY, REINHARDT and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

This suit was brought under Title VII, 42 U.S.C. § 2000e, and under 42 U.S.C. § 1981 with pendent state claims, by Elbert J. Davis against Xerox Corporation. Davis appeals from a judgment in favor of Xerox. We affirm.

*Events.* On January 7, 1981 Davis sued Xerox for discriminatory demotion in 1975 and added, by an amendment of his complaint, a count for illegally discharging him in 1983. The district judge (the first judge) made rulings on discovery and on December 23, 1981 dismissed the discriminatory demotion claim as barred by the Statute of Limitations. On July 18, 1984 the first judge recused himself. The case was ultimately assigned to Judge Hupp, and in a jury trial before him Xerox prevailed on the remaining issue of the discriminatory discharge.

In 1979, the first judge had filed with the clerk of the district court the Financial Disclosure Report required by 28 U.S.C. app. § 301. It showed the judge in 1978 receiving from Xerox income labeled "interest" in an amount under $1,000. On May 13, 1980 the first judge had amended his 1979 Financial Disclosure Report but continued to show interest income for 1978 from Xerox in an amount under $1,000.

The first judge's Financial Disclosure Reports for 1980, 1981, 1982, and 1983 do not reflect any income from Xerox. But on July 13, 1984 he wrote the Chairman of the Judicial Ethics Committee that he had "just recalled" that "some years ago" he had purchased a $500 warrant issued by Xerox and that he had "received dividends in the amount of $30 a year." His Financial Disclosure Report for 1984, filed May 15, 1985, showed the receipt of interest income from Xerox in an amount under $1,000.

*Issues.* The principal issue on this appeal is whether the rulings made by the first judge prior to his recusal should be allowed to stand. Davis also appeals certain rulings on evidence made by Judge Hupp.

*Analysis.* No one should be judge in his own case. The principle is ancient. Long established in Roman, in canon, and in English law, the principle's classic application is by Chief Justice Coke upholding the right of a graduate of Cambridge University to practice medicine without being mulcted by the judicial representatives of a monopoly conferred on the graduates of University College, London—representatives who would share in the mulct imposed. *Dr. Bonham's Case*, 8 *Co.* 107a, 113b, 77 *Eng. Rep.* 638, 646 (K.B.1608). In the United States the principle has been elevated to one of constitutional law so that due process is violated when a judge has "a direct, personal, substantial, pecuniary interest" in the judgment. *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927). *Tumey* has been glossed to mean that a judge is disqualified when he has "the slightest pecuniary interest." *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 148, 89 S.Ct. 337, 339, 21 L.Ed.2d 301 (1968) (quoting *Tumey*, 273 U.S. at 524, 47 S.Ct. at 441).

Taken to this extreme, the principle operates not merely to bar the judge who is actually incapacitated from judging by vir-

tue of his bias but to eliminate the judge who might be tempted to go from the harmless to the dangerous and the judge who appears to the public at large, although he is not, venal. The principle becomes prophylactic and cosmetic; it functions as "a fence around the law" and to enhance the image of the court.

Against this background of a fundamental requirement judicially adopted and artfully expanded in the federal courts, we apply a statutory formulation of the principle. Under 28 U.S.C. § 455(a) the duty to recuse is mandatory. The judge "shall disqualify himself" in any case where his impartiality "might reasonably be questioned." This mandatory duty is clearly distinct from the mandatory duty imposed under § 455(b) where knowledge by the judge is required. 28 U.S.C. § 455(b) prescribes that a judge "shall ... disqualify himself" when he "knows" that he has a "financial interest" in the subject matter in controversy. "Financial interest" is defined by the statute itself as any pecuniary interest "however small." The phrase "however small" has been authoritatively construed as meant literally. *See In re Cement Antitrust Litigation,* 515 F.Supp. 1076 (D.Ariz.1981), *aff'd,* 688 F.2d 1297 (9th Cir.1982), *aff'd for want of a quorum,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). The statute, like the principle embodied, now has prophylactic and cosmetic functions. We apply it mindful of those functions.

We have before us the judge's Financial Disclosure Reports for 1979 and 1984, and we take judicial notice of the intervening Reports. In 1979 the judge holds an obligation of Xerox that pays him interest. In 1984 he holds an obligation of Xerox that pays him interest. His Financial Disclosure Reports for the intervening years show no income from the sale of this obligation. It is a reasonable inference that he held the same security from 1979 to 1984. The inference is confirmed by his letter in July 1984 to the Chairman of the Judicial Ethics Committee indicating that he has, for some indefinite time in the past, been in the receipt of $30.00 a year from Xerox.

The description of this income as "dividends" does not of course jibe with the description on his 1979 and 1984 Reports, but it may be explained as rough recollection of a trifling annual payment.

Section 455(a) covers acts that may *appear* to create a conflict even if in reality none exists. Section 455(b), on the other hand, is a per se rule and covers acts that actually create a conflict even if there is no appearance of one. Frequently, an overlap will occur—an act will appear to create a conflict and will fall within the per se rule. Here, we ask if either section of the statute was violated.

■ To possess a security that yields interest is to possess a pecuniary interest in the issuer. To possess a warrant, entitling one to buy the stock of the issuer at a fixed price, is also to possess a pecuniary interest. The first judge held a financial interest in Xerox. No reasonable person, however, would suppose that the value of Xerox stock subject to the warrant or the warrant itself or the financial stability of Xerox as a debtor would be affected one thimbleful by the outcome of the present suit. The judge's own financial welfare would be advanced not one whit whichever way he decided. No reasonable person would suspect bias in the judge. He did not violate § 455(a). Did he violate § 455(b)? He did if from 1981 to 1983 he knew he possessed the interests earlier and later reported.

■ Acknowledging that he received income from the obligation in 1979 and for some time prior to July 1984, is the judge conclusively presumed to have "known" in 1980, 1981, 1982, and 1983 that he owned the warrant and the obligation generating the income? Apparently he had forgotten and, subjectively speaking, had no knowledge of his interests when he sat on Xerox's case. The argument is advanced that we should not go by the subjective awareness of the judge. A subjective standard subverts the statutory purposes of prevention and image-burnishing. It would be all too easy for a judge in a gross case—not

the kind of case we have here—to say, "I forgot, and so I did not know." The measure, it is contended, has to be objective. What the judge has publicly declared he owns, he *knows* he owns. The judge here, it is maintained, must have known during the time he sat on *Davis v. Xerox* that he owned the warrant and the obligation of Xerox. Consequently, it is argued, he was disqualified by the statute from acting in a case where Xerox was a party.

The statute does not permit the parties to waive the disqualification—although after it was discovered the parties could have stipulated before Judge Hupp to be bound by the rulings of the disqualified judge had they or Judge Hupp been aware of the problem. Only on appeal did Davis obtain copies of the first judge's reports and bring them to the attention of a court. Davis' objection is still timely. Nothing that took place before Judge Hupp cured the defect.

The statute does not prescribe a sanction where the judge disregards its command. There can, however, be little doubt as to the effect on the case where the statute is disregarded and timely objection is made. Where an objection is properly made at the outset of a trial, the judge must recuse himself and the case will be tried by a different judge. Where the express statutory standard has been violated and a judge has sat whom Congress had disqualified from sitting, the disqualified judge's rulings are, on appeal, to be vacated. *William Cramp and Sons Ship and Engine Building Co. v. International Curtiss-Marine Turbine Co.*, 228 U.S. 645, 33 S.Ct. 722, 57 L.Ed. 1003 (1913). Consequently, if the judge had knowledge within the meaning of the statute at the time he sat, all his rulings must be vacated. The question, however, is what result is required if at the time of sitting a judge had in fact forgotten a negligible interest.

We deal here with a statute of great rigidity, which imposes on a federal judge the duty of recusal when the judge "knows" that he or a member of his family has a financial interest, "however small," in the subject matter in controversy or in a party to the controversy. 28 U.S.C. § 455(b)(3), (d)(4). Although the statute is sometimes disruptive when applied prospectively, *see In re Cement Antitrust Litigation, supra*, Congress was willing to accept disruptions in return for the perceived benefits of promoting public confidence in the judiciary. *See ibid*, at 1311–13.

The case is different, however, when the statute is not to be applied prospectively, but to be applied retrospectively to rulings the judge has already made. In such retrospective applications we find wisdom in the observation of the Fifth Circuit interpreting Section 455(a): "Because of the harsh consequences that can result, knowledge of facts should not lightly be imputed to a judge." *Health Services Acquisition Corp. v. Liljeberg*, 796 F.2d 796 at 803 (5th Cir.1986). We are unwilling to presume that because the judge once knew, he could not have forgotten. The right course under § 455(b) as under § 455(a) is to proceed on a case by case basis, determining the existence of disqualifying knowledge at the time the judge sat, in the way that a state of mind is normally determined, from inspection of all the circumstances. If a reasonable person would conclude from all the circumstances that the judge did not have knowledge at the time he sat, his rulings stand. If the circumstances are such that a reasonable person would conclude that the judge had not forgotten but continued to know, his rulings must be vacated. The rule protects against abuse by a party who knows of or suspects a minor financial interest of which the judge is not aware, and who quietly awaits the outcome of the trial before raising the point. On the other hand, where the financial interest is substantial or appears to have had the potential of affecting the judge's rulings, the interest will be one that reasonable persons would conclude the judge was aware of, whatever his pretense of ignorance. The judge's rulings will then be invalidated.

Applying this rule to the present case, we conclude that it is not necessary to vacate the rulings made by the first judge.

He had reported his small interest in Xerox in 1979, two years before this case was brought. For the following four years, the reference to Xerox dropped from his reports, to reappear in 1984 near the time when he disqualified himself. In his letter to the Chairman of the Judicial Ethics Committee, the judge made it clear that he had in fact forgotten. A reasonable observer would draw from these circumstances the conclusion that the judge during 1980–1983 was unaware of his interests and so did not know of them within the meaning of the statute. He did not during these years violate § 455(b). His rulings on the statute of limitations and other pretrial matters therefore need not be vacated.

Davis also attacks certain evidentiary rulings made by Judge Hupp. We have reviewed them and find no abuse of discretion.

AFFIRMED.