**Stephen YAGMAN, Plaintiff,**

v.

**REPUBLIC INSURANCE, et al., Defendants.**

**No. CV 91–423–R (WDK).**

United States District Court, C.D. California.

March 27, 1991.

Yagman and Yagman, P.C., Venice, Cal., for plaintiff Yagman.

Ramsey Clark, New York City, for respondent Stephen Yagman.

## ORDER RE PLAINTIFF'S MOTION TO DISQUALIFY CHIEF JUDGE MANUEL L. REAL

KELLER, District Judge.

Before the Court is Plaintiff Yagman's motion pursuant to 28 U.S.C. §§ 144 and 455 to disqualify Judge Real. The Court has considered the motion, and the declaration and memorandum filed in support thereof. The Court has also considered Yagman's statements on the record during a telephone conference on February 28, 1991, Yagman's supplemental declaration filed on March 4, 1991 in response to the telephone conference, Yagman's statements at the hearing on March 5, 1991, and Yagman's March 21, 1991 response to the Court's March 19, 1991 minute order.

### A. Background

Yagman is a local attorney known in this city for representing plaintiffs in civil rights actions. He is representing himself in the above-entitled case, which was randomly assigned to Judge Real.

Yagman moves this Court to recuse Judge Real on the bases that Judge Real harbors an "actual bias" against him, and that there would be a "grave appearance of impropriety" if Judge Real were to preside over a case in which he is a party. Yagman Motion at 2.

In the mid–1980s, Yagman was involved in what he describes as a "bitter and hard-fought controversy" with Judge Real. Yagman Motion at 2. The "controversy" to which Yagman's motion alludes stemmed from the case of *Brown v. Baden,* tried by Yagman before Judge Real in April, 1984. As a result of what the Ninth Circuit termed Yagman's "poor lawyering" —"bickering and misconduct which has pervaded the action and which spawned the court's ire"—*Matter of Yagman,* 796 F.2d 1165, 1188 (9th Cir.1986), *cert. denied,* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 *modified,* 803 F.2d 1085, (1986), Judge Real imposed sanctions against Yagman and his professional corporation, Yagman & Yagman, P.C., in the amount of $250,000. Yagman appealed the validity of this sanction on the ground that it was a denial of due process as well as a violation of 28 U.S.C. § 455 for Judge Real not to have disqualified himself from the sanction proceedings.

The Ninth Circuit, in an extensive opinion, rejected Yagman's arguments. In *Matter of Yagman,* Circuit Judge Anderson wrote:

> [W]e are convinced, after a thorough review, that due process concerns have been satisfied.... Further, we do not find in the record the type of personal embroilment or derogatory attacks leveled at Judge Real that would ordinarily carry such potential for bias as to require disqualification as a matter of due process.

796 F.2d at 1181. The Ninth Circuit was just as strong in rejecting the contention that Judge Real erred by not disqualifying himself for bias under section 455:

> [T]here is no support in the record for the claim that Judge Real was personally biased or prejudiced against Yagman. The invidious motive articulated by Yagman is entirely speculative. Further, although it is obvious that Yagman and Judge Real clashed several times during the trial over various objections, evidentiary matters, and rule violations, we find none of it remarkable enough to indicate a need for Judge Real to disqualify himself from deciding the issue of sanctions.... We cannot find, on this record, reasonable grounds to question the impartiality of Judge Real.

The appellate panel did, however, find that Judge Real, by not specifying Yagman's federal rule violations, failed to lay a proper analytic foundation for imposing sanctions as he did. Accordingly, the sanctions award was reversed and remanded for a new hearing on the question of sanctions. Rather than remand the question back to Judge Real, the Circuit ordered the case to be randomly reassigned "to preserve the appearance of justice." 796 F.2d at 1188.

Judge Real apparently opposed the reassignment of the remand by seeking a writ of certiorari in the United States Supreme Court. The Supreme Court denied certiorari.

In the instant motion, Yagman bases his argument for recusal by attributing to Judge Real invidious motives much like those the Ninth Circuit found entirely speculative.

Yagman characterizes Judge Real's effort to seek certiorari as "Judge Real sued me *personally*," Yagman Motion at 2 (emphasis in original), in a case he says was entitled "*Manuel L. Real etc. v. Stephen Yagman*." Yagman has provided no details of the nature of that suit, and has failed even to specify what, if any, causes of action Judge Real alleged against him. By telephone conference on February 28, 1991, this Court requested Yagman to explain how and why Judge Real sued him personally. Yagman requested permission to file his answer in writing. The Court so allowed, and Yagman filed a supplemental declaration by which he, in his terms, reluctantly agreed to "set forth in great detail the substance of the dispute." Declaration at 2.

The substance of the dispute, as supplementally alleged by Yagman, consists solely of the clashes between him and Judge Real which occurred during the *Brown v. Baden* trial. In the five opportunities given Yagman to explain his position, he has failed to advise the Court as to the nature of "*Manuel L. Real etc. v. Stephen Yagman*." Nor did Yagman dispute the observation made by the Court that seeking a writ of certiorari, as Judge Real did, may have been the only way for Judge Real, a district judge, to challenge the Circuit's decision to reassign the remand. Yagman has offered no facts which suggest that "*Manuel L. Real etc. v. Stephen Yagman*" involved him in any way other than a named party. In substance, it was surely a dispute between Judge Real and the Ninth Circuit.[1] The fact that Yagman failed in each instance to cite the full entitlement of the writ of certiorari belies the good faith of his argument. The denial of certiorari in *Matter of Yagman*, found at 484 U.S. 963, 108 S.Ct. 450, is entitled *Manuel L. Real, Chief Judge, United States District Court for Central District of California v. Stephen Yagman*. By using "etc." to replace the title of Chief Judge, United States District Court for Central

---

1. Yagman did not provide the Court with the writ of certiorari or any of the attendant briefs in connection with *Manuel L. Real, Chief Judge, United States District Court for Central District of California v. Stephen Yagman*. These materials were required to satisfy Local Rule 7.5.2. ("Evidence of Motions"). By minute order dated March 19, 1991, the Court ordered Yagman to submit a copy of the complaint and all pleadings filed in connection with the application for certiorari. As a courtesy, the law clerk telephoned Mr. Yagman to notify him of the order so that Yagman would have more time to comply. During the course of that conversation, Yagman told the law clerk that the only materials filed in that case were the application for writ of certiorari filed by Judge Real, and the brief filed by Yagman in response. Yagman asked if those were the materials the Court demanded, and the law clerk said yes. Yagman then told the law clerk that those materials were in his firm's storage facility in New York, and that he might not be able to submit the materials by the deadline set by the Court, but that he would file a motion for an enlargement of time if that turned out to be the case. Alternatively, Yagman told the law clerk that his attorney in New York was also in possession of copies of these materials, and that he would attempt to retrieve them from that source.

Instead, Yagman filed a response in which he declares that he cannot comply with the minute order because "[t]here is no complaint and there are no pleadings in that case, and therefore, it is impossible to submit those materials to the Court."

Yagman fully understood that the materials sought by the Court were the application for certiorari and the responsive brief, and he informed the Court, through the law clerk, that he was in possession of these materials. Any ambiguity in the order was clarified by the telephone conversation described above. The Court has no doubt that Yagman's response, whereby he purports to show cause for disobeying this Court's Order, was not filed in good faith and is not well grounded in fact or warranted by existing law. This contumacious and manifest violation of Rule 11 requires the Court to sanction Yagman. Yagman is also in violation of 18 U.S.C. § 401(3). Accordingly, Yagman is hereby Ordered to submit within fifteen (15) days of the date of this Order a supplemental memorandum setting forth such facts and law to show cause why sanctions should not issue for the above-stated reasons.

District of California—the capacity in which Judge Real brought suit—Yagman, it seems, sought to mislead this Court into accepting his characterization that "Judge Real sued me *personally.*" (emphasis in original).

■ By moving to recuse Judge Real on the basis that "Judge Real sued me personally," Yagman has re-entered the waters of Rule 11. Yagman has also failed to support his factual contentions in violation of Local Rule 7.5.2. Nor on the five opportunities given him has Yagman given the Court any reason to believe that this argument, manifestly not "well grounded in fact," is offered in good faith. It is a ruse, filed in violation of Fed.R.Civ.P. 11 and requiring the Court to impose upon Yagman an appropriate sanction.

Rule 11 provides that the court "shall impose" a sanction upon counsel or upon a party, when one or the other files a signed "pleading, motion, or other paper," yet lacks a belief formed after reasonable inquiry that it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11.

A lawyer has an obligation to the court to help the judicial system function properly. As the First Circuit recently explained,

> While [a lawyer] must provide "zealous advocacy" for his client's cause, we encourage this only as a means of achieving the court's ultimate goal, which is finding the truth. Deceptions, misrepresentations, or falsities can only frustrate that goal and will not be tolerated within our judicial system.

*Unanue–Casal v. Unanue–Casal,* 898 F.2d 839 (1st Cir.1990), *citing, Wagner v. Williford,* 804 F.2d 1012, 1017 (7th Cir.1986) (duty to client cannot override duty to respect system of justice); *Steinle v. Warren,* 765 F.2d 95, 101 (7th Cir.1985) (as "officer of the court ... [lawyer's] duty to the court is paramount, even to the interests of his client"). *See also, Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* —— U.S. ——, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (uphold-

ing Rule 11 sanction, despite attorney's good faith, because the Rule's objective is "to deter baseless filings and curb abuses.").

This "court officer" obligation, recognized by Rule 11, is meant "to enlist the bar in the enterprise of administering the law, thereby making it more difficult for the strong, or wealthy, to use the very costs of the legal system to undermine its basic objectives." *Id.*

Yagman's attempt to rely on *Manuel L. Real, Chief Judge, United States District Court for Central District of California v. Stephen Yagman* is irresponsible and a breach of his duty as a court officer. *See also,* Rule 7–105 of the Rules of Professional Conduct for the State Bar of California ("In presenting a matter to a tribunal, a member of the State bar shall: (1) Employ ... such means only as are consistent with the truth, and shall not seek to mislead the judge ... by an artifice or false statement of fact or law.").

■ Furthermore, the Court need not rely on the authority of Rule 11 to sanction Yagman. It is well within this Court's inherent power to levy sanctions in response to such abusive litigation practices. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *See, Miranda v. Southern Pacific Transportation Co.,* 710 F.2d 516 (9th Cir.1983). Such power is incident to the court's "duty to protect the integrity of the judicial process." *Dolphin Plumbing Co. v. Financial Corp. of North America,* 508 F.2d 1326, 1327 (5th Cir.1975). See *Eash v. Riggins Trucking, Inc.,* 757 F.2d 557, 562–63 (3d Cir.1985) (inherent power derives from "judicial powers pursuant to Article III," from "the nature of the court," and from "necessity" or "practicality"); *Woodham v. American Cystoscope Co.,* 335 F.2d 551 (5th Cir.1964) ("The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it."). The "power of the court to punish attorneys as officers of the same, for misbehavior in the practice of the profession ... has been recognized and

enforced ever since the organization of courts, and the admission of attorneys to practice therein." *Ex Parte Bradley*, 74 U.S. (7 Wall.) 364, 19 L.Ed. 214 (1869). "The court's control over a lawyer's professional life derives from his relation to the responsibilities of a court." *Theard v. U.S.*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342, 1344 (1957).

Accordingly, Yagman is hereby Ordered to submit within fifteen (15) days of the date of this Order a supplemental memorandum setting forth such facts and law to show cause why sanctions should not issue.

### B. Standard

The issue before the Court is solely whether the events which arose out of *Brown v. Baden*, namely, the issues addressed in *Matter of Yagman*, justify recusal under 28 U.S.C. §§ 144 and 455.

The standard for recusal under both 28 U.S.C. § 144 and 455 is whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Matter of Yagman*, 796 F.2d 1165, 1179 (9th Cir.1986); *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1399 (8th Cir.1983).

### C. Discussion

■ Section 455, completely rewritten by Congress in 1974, provides in pertinent part:

(a) Any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party ...

The stated purpose of the 1974 revision of section 455 was to "enhance the public confidence in the impartiality of the judicial system." *United States v. Conforte*, 457 F.Supp. 641 (D.Nevada, 1978), *citing* 3 U.S. Code Cong. & Admin.News (1974) pp. 6351, 6355; 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction §§ 3541–53 (1975); Note, Disqualification of Federal Judges for Bias Under 28 U.S.C. Section 144 and Revised Section 455, 45 Fordham L.Rev. 139 (1976).

Section 455 imposes a self-enforcing duty on the judge, although its provisions may also be asserted by a party to the action by means of a motion in the trial court. *Id.*, *citing Davis v. Board of School Commissioners*, 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). By contrast, 28 U.S.C. § 144 establishes a specific procedure by which a litigant may challenge the impartiality of a district court judge prior to or during a trial.

The sensitivity of the issue of judicial disqualification was carefully addressed by the *Conforte* court, whose cite of a 1938 opinion by Judge Frank of the Second Circuit bears repeating:

Democracy must, indeed, fail unless our courts try cases fairly, and there can be no fair trial before a judge lacking in impartiality and disinterestedness. If, however, "bias" and "impartiality" be defined to mean the total absence of preconceptions in the mind of the judge, then no one has ever had a fair trial and no one ever will. The human mind, even at infancy, is no blank piece of paper. We are born with predispositions; and the process of education, formal and informal, creates attitudes in all men which affect them in judging situations, attitudes which precede reasoning in particular instances and which, therefore, by definition, are prejudices.... Interests, points of view, preferences, are the essence of living. Only death yields complete dispassionateness, for such dispassionateness signifies utter indifference....

Much harm is done by the myth that merely by putting on a black robe and taking the oath of office as a judge, a man ceases to be human and strips himself of all predilections, becomes a passionless thinking machine. The concealment of the human element in the judicial process allows that element to operate in an exaggerated manner; the sunlight of awareness has an antiseptic ef-

fect on prejudices. Freely avowing that he is a human being, the judge can and should, through self-scrutiny, prevent the operation of this class of biases....

Disinterestedness does not mean childlike innocence. If the judge did not form judgments of the actors in those courthouse dramas called trials he could never render decisions. *In re J.P. Linahan,* 138 F.2d 650, 651–54 (2d Cir.1943).

These basic principles inform the Court's consideration of Yagman's contention that Judge Real must be recused because he is, or appears to be, impermissibly biased and prejudiced against him.

## D. Analysis

Yagman argues for Judge Real's disqualification on two bases: (1) actual bias, and (2) the perception of bias.

### (1) *Actual Bias*

Yagman has presented no evidence of any personal bias against him. As discussed above, Yagman's claim of actual bias rests on *Matter of Yagman* and the events surrounding that case. That case "firmly rejected Yagman's claims of judicial bias", 796 F.2d at 1188, and there is not a single indicia of bias offered by Yagman outside of that case.

### (2) *Appearance of Bias*

■ In the recent case of *Preston v. United States,* the Ninth Circuit noted, "Section 455(a) covers circumstances that appear to create a conflict of interest, whether or not there is actual bias." 923 F.2d 731, 733 (9th Cir.1991), *citing, Davis v. Xerox,* 811 F.2d 1293, 1295 (9th Cir. 1987); *Herrington v. Sonoma County,* 834 F.2d 1488, 1502 (9th Cir.1987).

The standard for judging the appearance of partiality requiring recusal under 28 U.S.C. § 455 is an objective one: "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id. See also, United States v. Nelson,* 718 F.2d 315, 321 (9th Cir.1983), *Herrington,* 834 F.2d at 1502. Accordingly, this Court must base its ruling only on

this objective standard; it will not, and cannot, substitute its own subjective evaluation of the personalities involved for that of the reasonable person.

■ Yagman's position that Judge Real's impartiality might reasonably be questioned again relies solely on the events of *Matter of Yagman.*

The Court has carefully examined that opinion, and finds that the factors considered by the Ninth Circuit in deciding to remand to a judge other than Judge Real were isolated in time and circumstance to that case, and that the holding of that opinion does not suggest that forever there will be an appearance of impartiality when Judge Real presides over a matter involving Yagman.

In remanding the issue of sanctions to a different district judge, the Ninth Circuit in *Matter of Yagman* emphasized that "[t]his type of relief is exceedingly rare," and that although it did not doubt Judge Real's ability to act fairly, this most unusual action was necessary to "preserve the appearance of justice." *Id.* In fact, as already noted, the Circuit stated that "although it is obvious that Yagman and Judge Real clashed several times ... we find none of it remarkable enough to indicate a need for Judge Real to disqualify himself." *Id.* at 1181.

Nevertheless, Yagman argues that this limited ruling requires the recusal of Judge Real some five years later in a wholly unrelated case. This argument has no more force than the obviously inadequate proposition that judges who err in sanctioning attorneys are, *per se,* disqualified from presiding over any future cases in which that attorney appears as an attorney or a party. The law does not go nearly that far.

Section 455(b) describes situations that create an apparent conflict by providing examples of situations in which a judge's "impartiality might reasonably be questioned" pursuant to section 455(a). Sanctioning an attorney is nowhere to be found in that list which, although not exhaustive, is certainly instructive.

In sum, Yagman has offered no evidence that permitting Judge Real to preside over the present case would create an improper appearance of judicial bias. Neither the facts of *Matter of Yagman* nor Yagman's conclusory allegations would lead a reasonable person to conclude that Judge Real's impartiality might reasonably be questioned.

### E. The Illusory Distinction Proposed by Yagman

It is curious to note that Yagman concedes that were he representing a client other than himself, he would have no basis for seeking the recusal of Judge Real. The substance of Yagman's allegations of bias was simply put by Yagman in his declaration—"Judge Real does not like me." If this, as Yagman concedes, does not create an unacceptable appearance of judicial bias when Yagman appears before Judge Real as a litigator, it is difficult to perceive how that perception changes when Yagman takes on the additional role of litigant.

The irrelevance of this distinction in the present case is emphasized by Yagman's statement that he exclusively represents plaintiffs in civil rights cases. These cases, of course, entitle lawyers to recover attorney's fees pursuant to 42 U.S.C. § 1988. Alternatively, they are often tried on a contingency fee basis. As such, Yagman's compensation in such cases is based on the award recovered by his clients. In other words, in any case he would try before Judge Real, Yagman would have a financial interest in the subject matter in controversy and/or in a party to the proceeding. *See, e.g.,* 28 U.S.C. § 455(b)(4). Put yet another way, Yagman is a "partner" with his client, a party in interest. Yagman is no more insulated from Judge Real's alleged bias as an attorney than he is as a plaintiff.

Judge Real is, no doubt, keenly aware of the events complained of by Yagman, and he has decided not to recuse himself under § 455. Yagman's § 144 motion is properly considered by this Court, but there are no facts to recommend it. Inherent in Judge Real's decision not to recuse himself is his

acceptance of the duty imposed on every judge to put aside whatever predispositions he may have and decide this matter fairly and objectively. No reasonable person, given all the facts, would have reason to quarrel with Judge Real's statement, made *sub silentio*, that he will try this case impartially.

### E. Conclusion

For the above reasons, Yagman's motion to disqualify Judge Real is HEREBY DENIED.

IT IS SO ORDERED.