**EXXON CORPORATION, et al., Plaintiffs,**

v.

**Harold HEINZE, et al., Defendants.**

**Civ. No. A91–0543.**

United States District Court, D. Alaska.

Feb. 24, 1992.

Carl J.D. Bauman (argued), Joseph R.D. Loescher, Hughes, Thorsness, Gantz, Pow-

ell & Brundin, Anchorage, Alaska, for plaintiffs.

Wilson Condon, Richard W. Maki (argued), Condon, Partnow & Sharrock, P.C., Anchorage, Alaska, and also Bruce M. Botelho, Asst. Atty. Gen. of State of Alaska, Juneau, Alaska, for defendants.

## ORDER DENYING RECUSAL

SINGLETON, District Judge.

Plaintiffs (collectively called "Exxon") were sued by the State of Alaska ("State"), in the state superior court, in a dispute over royalties due from Exxon to the State for oil drilled on State land. The State charged that Exxon had underpaid the royalties due it. Exxon counterclaimed charging that it had overpaid the State. This law suit is still in state court. For clarity I will refer to it as the royalty case. Exxon brought this separate suit in federal court seeking injunctive relief barring state trial judges and jurors from deciding the royalty case. For clarity, I will call this litigation the proper forum case.

Exxon argues that all state judges and jurors are disqualified from participating in the royalty case because if the State prevails at trial, a portion of the damages it recovers will be paid into the Permanent Fund and will be distributed to all Alaska state citizens as dividends. Conversely, if Exxon wins, the damages it recovers will be paid out of funds which otherwise would

go into the Permanent Fund and be distributed to the State's citizens.

In Exxon's view, the possible impact of a judgment in the royalty case on the Permanent Fund, and by extension on possible future dividends, constitutes a financial interest in the outcome of the royalty case owned by every resident of Alaska. Consequently, argues Exxon, no resident of Alaska may participate as a judge or juror in deciding the royalty case. *Cf. Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).

The proper forum case was randomly assigned to me by the Clerk of Court. Exxon has filed a motion for my recusal, at Docket No. 10. Pursuant to 28 U.S.C. § 455, Exxon contends that its counterclaims in the royalty litigation might conceivably affect the quantity of money in Alaska's Permanent Fund. Since I, like the other United States District Court Judges for this District of Alaska, currently receive dividends, Exxon argues that I and, by implication, all resident Alaska judges should recuse.[1] In the exercise of my discretion and after a careful evaluation of Exxon's arguments and the State's acquiescence, I decline Exxon's invitation.[2] My reasons follow.

## THE PERMANENT FUND

Article IX, Section 15 of the Constitution of the State of Alaska establishes the Per-

1. I view Exxon's request as directed only at me. I have no right to order the recusal of any other judge. *See In re Virginia Electrical and Power Co.* 539 F.2d 357, 364 (4th Cir.1976); *Feichtinger v. State*, 779 P.2d 344, 347 (Alaska App.1989). Thus, I could not assign this case to an out-of-district judge, even if I wished to do so. Only the Chief Judge of the Ninth Circuit may do that. *Cf.* 28 U.S.C. § 292(b).

2. In a sense, this request for recusal previews the issues in the forum selection case. A decision that all federal judges in the District of Alaska were disqualified from sitting under federal law would strongly suggest the conclusion that all state judges were disqualified under the virtually identical state law regarding disqualification for cause. *See* AS 22.20.020(a)(9). The chief difference between state judges and federal judges would appear to turn on the common law "rule of necessity." *See United States of America v. Will*, 449 U.S. 200, 216–17, 101 S.Ct.

471, 481–82, 66 L.Ed.2d 392 (1980). If it is decided that 28 U.S.C. § 292(b), which empowers the chief judge of a circuit to appoint a substitute judge, removes the necessity for district judges in a particular district to sit if all the judges in that district are vulnerable to the same challenge, then Exxon's case for disqualification of all Alaskan federal judges would be strengthened. As I explain, *infra*, the rule of necessity is not avoided by the operation of that statute since this Court has no power to compel the action by the Chief Judge of the Ninth Circuit or by the Chief Justice which is necessarily prerequisite to appointment of a substitute judge. In any event, the availability of out-of-district federal judges to hear federal aspects of this case would not remove the necessity for Alaska state judges to hear the state aspects because there is no comparable procedure available for transferring state cases out of state for trial, or assigning non-state residents to hear state cases.

manent Fund and provides for the investment of its principal, and the paying over of its earnings from that investment into the State's General Fund. It provides:

**Section 15. Alaska Permanent Fund.** At least twenty-five per cent of all mineral lease rentals, royalties, royalty sale proceeds, federal mineral revenue sharing payments and bonuses received by the State shall be placed in a permanent fund, the principal of which shall be used only for those income-producing investments specifically designated by law as eligible for permanent fund investments. All income from the permanent fund shall be deposited in the general fund unless otherwise provided by law [Effective February 21, 1977].

Statutes implement this provision by establishing the Alaska Permanent Fund Corporation.[3] Other statutes provide for the Permanent Fund dividend.[4] It is important to recognize that a resident's expectancy regarding future dividends is a matter of legislative grace, not state constitutional right.

## ANALYSIS

■■■ At the outset, it is important to differentiate between two related grounds for disqualification set out in 28 U.S.C.

§ 455. On the one hand, a judge should disqualify herself if her impartiality "could reasonably be questioned." 28 U.S.C. § 455(a). In applying this standard, the judge should ask whether a reasonable person, aware of all the facts, would doubt the judge's impartiality. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 2202, 100 L.Ed.2d 855 (1988); *Davis v. Xerox*, 811 F.2d 1293, 1295 (9th Cir.1987). Exxon does not suggest that the Permanent Fund Corporation, established by the legislature, is a party to this case or to the royalty case which involves a contest between the producers and the State over oil royalties payable to the State as the landowner of lands on which the producers successfully drilled for oil. Exxon suggests instead that if every issue in the royalty case were decided in its favor and it recovered the maximum possible on its counterclaims, then it would owe less money for royalties and that, under current Alaska law, the Permanent Fund would be reduced. As a result, there would be less money to pay out in dividends so that an individual Alaskan might receive $80.82 less per year at some indeterminate future date. Clearly, a reasonable person would not doubt a judge's impartiality on that basis. While the average citizen might be-

---

**3.** AS § 37.13.010 (1991) provides:

**Sec. 37.13.010. Alaska permanent fund.** (a) Under art. IX, § 15 of the state constitution, there is established as a separate fund the Alaska permanent fund. The Alaska permanent fund consists of

(1) 25 percent of all mineral lease rentals, royalties, royalty sale proceeds, net profit shares under AS 38.05.180(f) and (g), and federal mineral revenue sharing payments received by the state from mineral leases issued on or before December 1, 1979, and 25 percent of all bonuses received by the state from mineral leases issued on or before February 15, 1980;

(2) 50 percent of all mineral lease rentals, royalties, royalty sale proceeds, net profit shares under AS 38.05.180(f) and (g), and federal mineral revenue sharing payments received by the state from mineral leases issued after December 1, 1979, and 50 percent of all bonuses received by the state from mineral leases issued after February 15, 1980;

(3) any other money appropriated to or otherwise allocated by law to the Alaska permanent fund.

(b) Payments due the Alaska permanent fund under (a) of this section shall be made to the fund once each month.

(c) The Alaska permanent fund shall be managed by the Alaska Permanent Fund Corporation established in this chapter.

AS 37.13.040 establishes the Permanent Fund Corporation, providing:

**Sec. 37.13.040. Alaska Permanent Fund Corporation.** There is established the Alaska Permanent Fund Corporation. The corporation is a public corporation and government instrumentality in the Department of Revenue managed by the board of trustees. The purpose of the board is to manage and invest the assets of the corporation in accordance with this chapter.

**4.** AS § 43.23.005 *et seq.* (1991). Half of the income of the Permanent Fund is distributed as Permanent Fund dividends. *See* AS 43.23.-045(b). This distribution is made only to those of Alaska's residents meeting certain criteria enumerated in the statutes. *See* AS § 43.23.005. The amount of the dividend is determined by law. *See* AS § 43.23.025.

lieve federal judges are for sale, it is unlikely that she would believe they come so cheap. *Cf. Davis v. Xerox,* 811 F.2d at 1295.

More troublesome is 28 U.S.C. § 455(b)(4) (1991), which provides, in relevant part:

(b) [A sitting judge] shall also disqualify himself [or herself] in the following circumstances:

. . . .

(4) He knows that he ... or his spouse or a minor child residing in his household, has a financial interest in the subject matter in controversy ... or any other interest that could be substantially affected by the outcome of the proceeding.

Exxon argues that each Alaskan, including the resident federal judges, has either a "financial interest in the subject matter in controversy" or an "other interest that could be substantially affected by the outcome of the proceeding." Clearly, an individual resident federal judge's interest in the outcome of this litigation is *de minimis.* Such an interest is not, until actually paid out, property personally owned, in any meaningful sense, but is a bare expectancy shared with the general public. *See In re New Mexico Natural Gas Antitrust Litigation,* 620 F.2d 794, 795 (10th Cir.1980); *In re City of Houston,* 745 F.2d 925, 931–32 (5th Cir.1984); *In re Virginia Electrical and Power Co.,* 539 F.2d 357, 366–67 (4th Cir.1976). Consequently, an expectancy regarding future dividends is not an "other interest that could be substantially affected." Thus, recusal would only be appropriate if I determined that I possess a "financial interest in the subject matter in controversy," satisfying the first prong of 28 U.S.C. § 455(b)(4).

I recognize that the Ninth Circuit has given the phrase "financial interest" an expansive reading in conformity with its statutory definition at 28 U.S.C. § 455(d)(4): "ownership of a legal or equitable interest,

however small." *See Davis v. Xerox,* 811 F.2d at 1295; *In re Cement Antitrust Litigation,* 688 F.2d 1297, 1311 (9th Cir. 1982). Nevertheless, the cases all involve ownership of stock or warrants to buy stock, albeit in tiny amounts. No Alaskan owns stock in the Permanent Fund. I recognize the fact that the statutory definition of "financial interest" includes "equitable interests." Exxon argues, by reference to the Permanent Fund's public relations material, that the Permanent Fund is a "Sacred Trust" in the eyes of its administrators. This may be so. However, no Alaskan "owns" an interest in the "Trust." The "right" to a dividend is a matter of legislative grace, not entitlement. What the legislature gives today, it can and, predictably will, take away tomorrow. *See, e.g., State v. Anthony,* 810 P.2d 155 (Alaska 1991) (certain felons not entitled to Permanent Fund dividends).

No one suggests that, if the legislature decided to abolish the dividends completely, any resident would have a cause of action to protect her alleged "legal or equitable" interest in receiving future dividends. No Alaskan has an assignable interest in future dividends. No Alaskan has anything to sell or transfer similar to the admittedly tiny interests mentioned in the reported cases dealing with stocks and warrants. No one suggests that an expectancy in future dividends is protected by the Due Process or Takings Clauses, made applicable to the states by operation of the Fourteenth Amendment to the United States Constitution. If the contingent "right" to a dividend is a financial interest because the legislature may raise or lower it, at whim, then every activity the State is involved in concerns its citizens' financial interests because the legislature can raise or lower taxes, at whim, to pay its debts and the judgments against it. It has been said, "No man's life or property are safe while the legislature is in session."[5]

---

5. I use the phrase "future dividends" to refer to the expectancy that a dividend will be payable in years beyond the current year. In October of each year, the Commissioner of Revenue determines the value of each dividend for that past year based on the profitability of the permanent

fund. *See* AS 43.23.025; public notice is given, *see* AS 43.23.028; and the dividends are eventually paid out, *see* AS 43.23.045, establishing the dividend fund, *see* AS 43.23.055(1), and providing for payment of dividends from that fund. It is possible that a resident might have a prop-

My conclusion that the expectancy a citizen has in receiving Permanent Fund dividends is not a financial interest is reinforced by consideration of 28 U.S.C. § 455(d)(4)(i)–(iv). It is important to stress that Congress did not identify the interests mentioned in those sections as "financial interests" and then exempt them from the reach of the statute. Instead, Congress provided that they were not "financial interests," thus delimiting the definition of financial interest by examples. It follows that any mere expectancy interest comparable to the interests mentioned in 28 U.S.C. § 455(d)(4)(i)–(iv) is also not a financial interest. The Court notes that all of the interests mentioned in 28 U.S.C. § 455(d) suggest a likelihood of future financial benefit far less contingent than the expectation interest of an Alaskan resident in future dividends from the Permanent Fund. None of the cited interests are subject to legislative whim as is an Alaskan resident's expectation of future Permanent Fund dividends.

Furthermore, I am not satisfied that there would not be a necessity to sit even if there might otherwise be justification for recusal. *See United States of America v. Will*, 449 U.S. 200, 212–16, 101 S.Ct. 471, 479–81, 66 L.Ed.2d 392 (1980). Exxon's basis for its challenge to me applies to every judge in the District of Alaska. Thus, it is not possible for the clerk of this Court to assign this case to another judge who would not be equally vulnerable to challenge. Exxon relies on the discretion

of the Chief Judge of the Ninth Circuit to assign a judge from outside the District and, in cooperation with the Chief Justice of the United States, to assign the matter to a judge from outside the Ninth Circuit. *See* 28 U.S.C. § 292(b), (d). I do not believe this discretionary power in those judicial officers meets the objection of necessity since there is no way that this Court can compel either officer to act. This Court cannot recuse unless it is certain that another judge is ready to assume its duty to the public and to the litigants. The fact that other judges have been assigned from outside the District, from time to time in the past, is no guarantee that a judge could be found who would be willing to take this case on a permanent basis.

Finally, I recognize that the judges of this state are in disagreement regarding this issue. Judge Kleinfeld recused in related litigation [6] and Judge Carpeneti of the Superior Court expressed concerns, similar to those relied upon by Exxon, at an earlier stage of these proceedings. I have carefully considered those judges' remarks and am unpersuaded. I find more persuasive Senior Judge James Fitzgerald's carefully reasoned published opinion in *Alaska Oil Co. v. State*, 45 B.R. 358 (D.Ak.1985).

Judge Fitzgerald reasoned that the Permanent Fund dividend was not a "financial interest" or an "other interest that could be substantially affected," 28 U.S.C. § 455(b)(4), and that controversies over oil taxes did not make a resident's expectation interest in future dividends an interest in

---

erty interest in current dividends once they are declared, *see, e.g.,* AS 43.23.065 (providing for exemption from execution under certain circumstances). It is clear that current dividends are not affected by the royalty case since it is yet to be decided. Only future dividends, as I use the term, might be affected and no one has an ownership interest in future dividends, *i.e.,* dividends that have not been authorized to be paid.

**6.** The State suggests that this is really a continuation of earlier litigation assigned to an out-of-District judge, which should be assigned to him once again. *See Standard Alaska Production v. Schaible,* 874 F.2d 624, 630 (9th Cir.1989). I disagree. That case was dismissed, and the dismissal was affirmed on appeal. This is a new case. For the same reason, Judge Kleinfeld's

unpublished decision is not the "law of the case."

Moreover, Judge Kleinfeld's decision would not be the law of the case, even if this was the same case, because the decision whether to recuse or not is discretionary. One judge cannot bind another judge's exercise of discretion. As I indicate in the text, in exercising this discretion, I find Judge Fitzgerald's carefully reasoned published opinion to be more persuasive than the unpublished ruminations of other judges. This is due in part to the fact that we give precedential effect to decisions that judges take the time to publish and withhold it from unpublished decisions. The latter are subject to less scrutiny and generally are not as thorough in their evaluation of the applicable law and the relevant facts.

the "subject matter in controversy," at least where the Permanent Fund and its Directors were not parties to the litigation, 28 U.S.C. § 455(b)(4). I agree with Judge Fitzgerald's conclusions.

I would not hesitate to recuse if there was any possible justification. Certainly, litigants have a right to a tribunal free from the appearance of bias. Congress has ensured that, at least in federal court, they will have such a tribunal. I have expressed concern in the past, however, that busy judges too often may view a request for recusal as an easy way to avoid complicated litigation. *See Feichtinger v. State*, 779 P.2d 344 (Alaska App.1989).[7] I imagine some judges would prefer a career of deciding uncontested divorces. This case involves well-financed litigants with highly imaginative and competent counsel. It would be a challenge for any judge. With Judge Kleinfeld's elevation to the Ninth Circuit, the remaining district judges in Alaska have a substantially increased caseload, and I am sure all of us might be tempted to unload any complicated case on a visiting judge. It would be a grievous violation of my oath of office to give in to that temptation. In my many years on the bench, I have no doubt decided many cases incorrectly. But no one can accuse me of ever ducking complicated litigation or seeking the easy way out. I have no intention of fleeing difficult litigation at this stage in my career.

IT IS THEREFORE ORDERED:

Exxon's request for recusal at Docket No. 10 is DENIED. In conformity with the practice in this District, I will treat the request as also based on 28 U.S.C. § 144 and refer the matter to Chief Judge Holland for review. Should Chief Judge Holland uphold my decision and deny recusal, I would entertain a request for certification of this matter to the Ninth Circuit to spare the parties the problems of pursuing mandamus. *See* 28 U.S.C. § 1292(b); *cf. In re Cement Antitrust Litigation*, 688 F.2d 1297, 1300–07 (discussing mandamus jurisdiction); *In re Virginia Elec. & Power Co.*, 539 F.2d 357, 363–64 (contrasting mandamus jurisdiction with interlocutory appellate jurisdiction).

---

7. In *Feichtinger* I stated:
   Judges will frequently be assigned cases involving unpleasant issues and difficult problems. Often litigants and their attorneys will be particularly vexatious. In many cases, publicity adverse to the judge is virtually certain no matter what decision he or she reaches. In such cases, judges insufficiently attuned to their responsibilities might readily welcome a baseless request for recusal as an escape from a difficult case. To surrender to such a temptation would justly expose the judiciary to public contempt based on legitimate public concern about judicial integrity and courage. While we agree that judges must avoid the appearance of bias, it is equally important to avoid the appearance of shirking responsibility.
   *Feichtinger*, 779 P.2d at 348.